# In the United States Court of Federal Claims

No. 17–889C

(Filed: September 11, 2023)

|  |  |
|---|---|
| **IDEAL INNOVATIONS, INC., et al.,** | ) |
|  | ) |
| *Plaintiffs,* | ) |
|  | ) |
| **v.** | ) |
|  | ) |
| **THE UNITED STATES, et al.,** | ) |
|  | ) |
| *Defendants.* | ) |
|  | ) |

*Ahmed J. Davis*, Fish & Richardson P.C., Washington, D.C., for Plaintiffs. With him on the briefs were *Thomas L. Halkowski*, *Andrew Schwentker*, *Jack R. Wilson*, and *Joshua Carrigan*.

*Nelson Kuan*, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for Defendant the United States. With him on the briefs were *Brian Boynton*, Acting Assistant Attorney General, and *Gary L. Hausken*, Director. Also with him on the briefs were *Grant D. Johnson* and *Alex Hanna*, Civil Division, United States Department of Justice, Washington, D.C. Of counsel were *Rachel Hicks* and *David Pace*, United States Department of Justice, Washington, D.C.

*Scott J. Pivnick*, Alston and Bird LLP, Washington, D.C., for Defendant Oshkosh Corporation.

*Holmes J. Hawkins, III*, King & Spalding, LLP, Atlanta, GA, for Defendant General Dynamics Land Systems, Inc., Force Protection, Inc., and General Dynamics Land-Force Protection, Inc. With him on the briefs were *Britton F. Davis* and *Mark Zambarda*, King & Spalding, LLP, Denver, CO, and *Katherine Vessels*, King & Spalding, LLP, Washington, D.C.

<u>OPINION AND ORDER</u>

*SOLOMSON*, Judge.

This case involving patents for armored military vehicles has been pending for more than six years, longer than the United States fought World War II.  Although the parties' dispute has traveled only between this Court and our appellate court, Plaintiffs have contended, for the entire duration of the voyage, that the patented invention at issue was first actually reduced to practice prior to the inking of a cooperative research and development agreement ("CRADA") with Defendant, the United States, acting by and through the Department of Defense.  That alleged fact is critical to Plaintiffs' central claim that the government has used or manufactured their inventions without license or lawful right and, thus, is liable for infringement.  According to the government, however, the invention was first actually reduced to practice during the term of the parties' CRADA, thus yielding the government a license to the inventions.  Plaintiffs lost that argument on summary judgment before Senior Judge Damich, but then persuaded the United States Court of Appeals for the Federal Circuit that the precise date of actual reduction to practice was a disputed, material fact requiring a remand and trial before this Court.  *See Ideal Innovations, Inc. v. United States*, 2021 WL 5754818 (Fed. Cir. Dec. 3, 2021) [hereinafter Federal Circuit Decision].

The return trip has not been smooth.  On remand, virtually on the eve of a trial this Court had scheduled to fulfill the Federal Circuit's mandate (and following *Markman* proceedings), Plaintiffs abruptly reversed their planned course.  Plaintiffs now essentially concede Judge Damich was right all along — that the evidence does *not* support their assertion that the invention at issue was reduced to practice prior to the CRADA.  This late-breaking admission dooms Plaintiffs' journey.  That is either because:  (1) it turns out that Defendants were correct about the facts and, thus, are now entitled to summary judgment pursuant to the Federal Circuit's decision and mandate; or (2) this Court will not permit Plaintiffs at this late date to attempt a new route to victory that is beyond the scope of the Federal Circuit's mandate.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  Invention Development and Patent History

The United States military faces hard decisions when designing and selecting troop vehicles for dangerous areas.[1]  Among these decisions is how to armor vehicles

---

[1] *See, e.g.*, U.S. Gov't Accountability Off., GAO-12-861R, *Counter-Improvised Explosive Devices: Multiple DOD Organizations are Developing Numerous Initiatives* (2012) (summarizing billions of dollars of spending on researching and acquiring armored troop vehicles); U.S. Gov't Accountability Off., GAO-10-155T, *Defense Acquisitions: Rapid Acquisition of MRAP Vehicles* 2-3 (2010) (describing different categories of armored transport vehicles).

against attack.  *See* ECF No. 1-2 ("the '648 patent") at 1:36–37.  Complicating this decision, a wide variety of threats endanger soldiers, including explosively formed penetrators ("EFPs").  *Id.* at 1:46; *see also* ECF No. 1 ("Compl.") ¶ 13.  Less armor on a vehicle exposes soldiers to greater injury from explosive attacks, whereas more armor generally means a heavier, and thus slower, vehicle.  Patent '648 at 1:37–40.  Other factors, like the cost of armor and a vehicle's usable lifespan, can also affect the military's vehicle design.  *Id.* According to the patents at issue in the case, the prior art of armoring vehicles provided low protection from all angles and was particularly ineffective against certain threats. Patent '648 at 1:44–49.

The two patents at issue in this case, both covering a "Highly Survivable Urban Utility Vehicle (HSUUV)," describe an armored vehicle that purports to optimize protection for soldiers while preserving vehicle mobility.  Patent '648 at 1:58–62; ECF No. 1-3 ("the '008 patent") at 1:41–45; Federal Circuit Decision at *1 (nonprecedential opinion filed at ECF No. 127).  To achieve this purpose, the inventor and Plaintiff, Mr. Robert Kocher, developed a way to configure vehicle armor to correspond to the threats facing different parts of a vehicle.  Patent '648 at 2:6–25; Patent '008 at 1:56–67, 2:1–7.  Ideal Innovations, Inc., The Right Problem, LLC, and Robert Kocher (collectively, "Plaintiffs") allege that the government infringed these patents.  Oshkosh Corporation, General Dynamics Land Systems, Inc., Force Protection, Inc., and General Dynamics Land Systems-Force Protection, Inc. (collectively, "Third-Party Defendants") joined the case on the side of the United States (collectively, "Defendants"), pursuant to Rule 14 of the Rules of the United States Court of Federal Claims ("RCFC").  *See* ECF Nos. 17, 20.

By 2005, Mr. Kocher was developing his HSUUV concept.  *See* Federal Circuit Decision at *1.  This included a presentation to the Defense Advanced Research Projects Agency ("DARPA") on August 16, 2005, through Mr. Kocher's company, Ideal Innovations, Inc.  ECF No. 49-2 at 6, 9–11 (DARPA presentation slides).[2]  On August 17, 2005, one day after the DARPA presentation, Mr. Kocher filed a provisional patent application for his HSUUV design.  Federal Circuit Decision at *1.  On January 20, 2006, Ideal Innovations provided a briefing to the United States Army Rapid Equipping Force ("REF") about the proposed armored vehicle Mr. Kocher invented.  *Id.* (citing Compl. ¶ 19).

On March 10, 2006, Mr. Kocher "conducted a test fire on sample armor kits (a.k.a. coupons), which . . . showed that some armor could withstand EFP attacks."  Federal Circuit Decision at *1 (citing ECF No. 77-1 ("Kocher Decl.") ¶ 23).  Following that test, Ideal Innovations and the government engaged in a series of exchanges leading to several

---

[2] *See also* ECF No. 73 at 2–3 (Defendants' motion for summary judgment ("MSJ") based on the statutory on-sale bar, 35 U.S.C. § 102(b) (precluding patentability of inventions in public use or on sale in the United States more than one year prior to the patent application date); ECF No. 79 at 3 (Plaintiffs' response in opposition to that MSJ).

agreements.  In a document dated April 10, 2006, Ideal Innovations transmitted a proposal to the U.S. Army Contracting Agency for a small number of "commercially based, fast, low cost, highly survivable vehicle[s]" for testing.  ECF No. 148-2 at 32–33. On June 24, 2006, Ideal Innovations transmitted a second proposal to the Army Contracting Agency for a small number of test vehicles.  *See* ECF No. 81-1 at 255.  On August 28, 2006, the Army Contracting Agency accepted Ideal Innovation's second proposal and awarded Ideal Innovations a contract "for the purchase of two prototype vehicles."  Federal Circuit Decision at *1; *see also* ECF No. 81-1 at 237–48 (contract documentation).  The contract anticipated testing the prototypes in March 2007.  Federal Circuit Decision at *1; *see also* ECF No. 81-1 at 227, 229, 231.

On February 10, 2007, Ideal Innovations entered into a CRADA with the United States Army Research Laboratory ("ARL") "to select the best armor to use on [Plaintiffs'] vehicle."  Federal Circuit Decision at *1–2 (citing CRADA § 2).[3]  The CRADA provided that Ideal Innovations and ARL both had a "license to practice any invention that was 'Made' in performance of work under the CRADA."  Federal Circuit Decision at *1–2 (citing CRADA § 7.4.5.1) ("Each Collaborator grants to the other Collaborator a nonexclusive, irrevocable, paid-up license to practice a Subject Invention Made by employees of the granting Collaborator or have the Subject Invention practiced throughout the world by or on behalf of the other Collaborator.").[4]  The CRADA further provided that an invention is "Made" upon its "first actual reduction to practice."  *Id.* (citing CRADA § 1.15).[5]

---

[3] The CRADA at issue has been filed with this Court several times during this litigation.  *See* ECF No. 49-3; ECF No. 72-1 at 89; ECF No. 81-1 at 89.  The parties previously stipulated "that the CRADA was fully executed on February 10, 2007."  Federal Circuit Decision at *2 (citing ECF No. 120).

[4] The CRADA defined "Collaborator" as "the ARL participant or the Non-ARL participant represented and bound by the signatories of this Agreement."  CRADA § 1.3.  ARL and Ideal Innovations, Inc. were the two CRADA participants.  ECF No. 81-1 at 89.

[5] "Enablement does not require actual reduction to practice." *Medtronic Inc. v. Edwards Lifesciences Corp.*, 2013 WL 12131745, at *5 (C.D. Cal. Nov. 27, 2013) (citing *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1366-67 (Fed. Cir. 2006)); *see also Falkner*, 448 F.3d at 1364 n. 8 ("An actual reduction to practice is also unnecessary to satisfy the written description requirement. ").  Thus, "a constructive reduction to practice that in a definite way identifies the claimed invention can satisfy the written description requirement." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1352 (Fed. Cir. 2010).  On the other hand, actual reduction to practice is critical to determining priority of invention. *See, e.g., Medtronic, Inc. v. Teleflex Innovations S.À.R.L.*, 68 F.4th 1298, 1303 (Fed. Cir. 2023) ("A patent owner may antedate an asserted prior art patent by showing conception of the claimed invention prior to the critical date and either actual reduction to practice prior to the critical date or 'reasonably continuous diligence' in reducing the invention to practice until its effective filing date."); *E.I. du Pont De Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1075 (Fed. Cir. 2019).  Here, the significance of the first actual reduction to practice relates

On March 5, 2007, REF performed a test fire that "was a success — the fully assembled prototype withstood attacks from EFPs."  Federal Circuit Decision at *2.[6] Ceradyne, a third party working for Ideal Innovations, assembled the tested vehicles, and Plaintiffs, at least until recently, have consistently contended that the assembly occurred "by February 1, 2007."  Federal Circuit Decision at *2 (citing Kocher Decl. ¶ 22) ("To ensure we met this deadline, we had the vehicles assembled with armor configured on the cab by about February 1, 2007.  Photographs of the vehicle from around that time were taken and provided to the Government[.]").

On April 16, 2007, Ideal Innovations sent an "unsolicited proposal" to U.S. Army Tank Automotive Command ("TACOM") to purchase armored vehicles.  ECF No. 81-1 at 189, 197, 211–12.  The proposal referenced successful Army testing of Ideal Innovation prototypes.  *See id.* at 196 ("The design was tested by the Rapid Equipping Force . . . . Tests were conducted . . . under laboratory conditions and by demonstrations in field environments . . . . The [vehicle] successfully proved itself to be a viable option[.]"); *id.* at 197–98 ("Testing of the [vehicle] has demonstrated its ballistic performance and mobility.").

On May 15, 2008, Mr. Kocher filed a second HSUUV patent application.  Patent '648 at 2; *see also* ECF No. 148-4 at 2.  On December 26, 2012, Mr. Kocher filed a third HSUUV patent application.  Patent '008 at 2.  The second application resulted in a lengthy prosecution history,[7] was ultimately issued as patent 8,365,648 ("the '648 patent") on February 5, 2013, and is one of the two patents at issue.  Patent '648 at 2; Compl. ¶¶ 58–59.  After revisions to the third application during the patent's prosecution,[8] the United States Patent and Trademark Office issued patent 8,651,008 ("the '008 patent") on February 18, 2014.  Patent '008 at 2.  This is the second patent at issue.

---

neither to patentability nor priority, but rather is dispositive of whether the government has a license to practice the inventions at issue pursuant to the CRADA.

[6] *See also* ECF No. 77 at 40 ("Plaintiff does not dispute that the March 2007 test fire occurred and was successful.  Indeed, this testing further validated I-3's innovative design."); Compl. ¶ 25 (describing coupon testing during the period March 5–19, 2007).

[7] *See, e.g.,* ECF No. 148-2 at 80–81 (amending claims on August 19, 2008); ECF No. 147-3 at 9–19 (August 28, 2008, declaration); ECF No. 148-2 at 46 (amending claims on September 30, 2009); *id.* at 22 (June 11, 2010, declaration); *id.* at 11 (amending specifications and claims on February 23, 2011); ECF No. 147-3 at 2–8 (August 30, 2011, declaration); ECF No. 148-2 at 5–6 (requesting reconsideration and removal of claim rejections).  The February 23, 2011 amendment canceled the application's then-existing claims and substituted the claims that appear in the '648 patent.  ECF No. 148-2 at 13–15; Patent '648 at 3:46–57, 4:1–56.

[8] *See* ECF No. 148-1 at 4.

### B. Procedural History

#### 1. Complaint

On June 29, 2017, Plaintiffs filed a complaint against Defendant, the United States. Federal Circuit Decision at *2. The complaint includes six counts. The first three are for patent infringement pursuant to 35 U.S.C. § 271(a) and 28 U.S.C. § 1498, with each count corresponding to a different HSUUV patent. *See* Compl. ¶¶ 42–57 (Count I, alleging infringement of the patent issued from the August 21, 2006, patent application); *id.* ¶¶ 58–71 (Count II, alleging infringement of the '648 patent); *id.* ¶¶ 72–86 (Count III, alleging infringement of the '008 patent).[9] Count IV alleges that the government's use of Plaintiffs' intellectual property rights constitutes an uncompensated taking in violation of the Fifth Amendment of the United States Constitution. *Id.* ¶¶ 87–95. Count V alleges that the government breached an implied-in-fact contract to engage in good faith and fair dealing and to maintain the confidentiality of Plaintiffs' proprietary information. *Id.* ¶¶ 96–99. Count VI claims the government misappropriated Plaintiffs' trade secrets by providing Plaintiffs' information to others. *Id.* ¶¶ 100–103. Third-Party Defendants joined the case following a court-issued notice to them in 2018. ECF Nos. 20, 21.

As explained below, only Count II and Count III remain for this Court's resolution.

#### 2. First Motion to Dismiss

On October 27, 2017, the United States filed its first motion to dismiss. ECF No. 11.[10] This case was then before Senior Judge Damich, who granted the government's

---

[9] Only the '648 and '008 patents remain at issue.

[10] Starting in August 2017 and continuing through 2023, the parties engaged in claim construction discovery and proceedings, also known as *Markman* proceedings in reference to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996). *See* ECF No. 10 ¶ 6(f)(iv). In particular, on August 25, 2017, this Court ordered parties to comply with special procedures for patent cases pursuant to 28 U.S.C. § 1498(a). ECF No. 10; *see* RCFC app. J ("Patent Rules of the United States Court of Federal Claims"). These procedures include instructions for claim construction proceedings. ECF No. 10 ¶¶ 11–12; *see also id.* ¶ 6(f)(iv) ("It may also be appropriate to divide the liability stage into discrete steps, such as construing the claims[.]" (footnote omitted)). On October 14, 2022, the parties filed a joint claim construction statement. ECF No. 143. The parties disagree regarding thirteen terms or groups of terms. *Id.* at 4–10 (listing fourteen entries, including a duplicate for "sufficient weight and thickness to stop armor piercing rounds"). The parties subsequently filed their respective claim construction briefs. ECF No. 147 (Plaintiffs' brief, filed November 4, 2022); ECF No. 148 (Defendants' response, filed November 14, 2022); ECF No. 149 (Plaintiffs' reply, filed November 21, 2022). This Court held a *Markman* hearing on February 7, 2023, *see* ECF No. 154 (scheduling the hearing); ECF No. 162 (hearing transcript), but does not reach the claim construction issues given this Court's conclusion that Defendants are entitled to summary judgment.

motion in two separate opinions, thereby dismissing Counts I, IV, V, and VI.  *See Ideal Innovations, Inc. v. United States*, 138 Fed. Cl. 244, 251 (2018) (filed at ECF No. 40 and dismissing Count I); *Ideal Innovations, Inc. v. United States*, 139 Fed. Cl. 737, 747 (2018) (filed at ECF No. 48 and dismissing Counts IV–VI); *see also* Federal Circuit Decision at *2 (citing ECF Nos. 40, 48).

### 3.  Second Motion to Dismiss

On October 5, 2018, Defendants filed a second motion to dismiss.  Federal Circuit Decision at *2 (citing ECF No. 49).  In that motion, the Defendants raised two arguments pursuant to RCFC 12(b)(6):   (1) the August 16, 2005, DARPA presentation meant Plaintiffs' inventions were unpatentable under the statutory on-sale bar codified at 35 U.S.C. § 102(b), *see* ECF No. 49 at 13–32; and (2) the CRADA gave the government a license to practice Plaintiffs' invention, *see id.* at 33–37, such that the government cannot be held liable for infringement as a matter of law.

On March 4, 2019, Judge Damich denied that motion, concluding that "[a]lthough Defendants' arguments . . . are interesting, they are more properly considered in a motion for summary judgment."   ECF No. 61 at 2; *see also* Federal Circuit Decision at *2 (describing Judge Damich's rejection of the second motion to dismiss).

### 4.  Defendants' On-Sale Bar Motion for Summary Judgment

On July 3, 2019, Defendants renewed their on-sale bar argument in a motion for summary judgment.  ECF No. 73.  As in the second motion to dismiss, Defendants once again argued that Plaintiffs' DARPA presentation constituted an offer to sell the inventions at issue more than one year prior to the patent applications' effective filing date, thus precluding patentability pursuant to 35 U.S.C. § 102(b).  ECF No. 73 at 1.[11] Although the parties fully briefed this motion, *see* ECF Nos. 79, 82, this motion was not resolved by Judge Damich, was not addressed during this case's trip to the Federal Circuit, and thus remains pending.

---

[11] The parties agree that, in light of the patents' filing date, the prior version of 35 U.S.C. § 102 applies to this case — *i.e.*, the version that existed before the Leahy-Smith America Invests Act, Pub. L. No. 112-29, sec. 3(b)(1), § 102, 125 Stat. 284, 285–86 (2011), took effect.  *See* ECF No. 73 at 7 n.4; ECF No. 79 at 10.

### 5.  Defendants' Motion for Summary Judgment Based on the CRADA's Licensing Provisions

Also on July 3, 2019, Defendants filed another motion for summary judgment.  ECF No. 72 ("CRADA License MSJ"); *see also* Federal Circuit Decision at *2.[12]  This motion forms the basis for much of this case's subsequent proceedings.  According to Defendants, "the patents were licensed to the government because they were first reduced to practice during the term of the [February 10, 2007] CRADA."  Federal Circuit Decision at *2.  In particular, Defendants argued:  (1) the CRADA gave a license to the government for inventions "Made" pursuant to the CRADA; (2) an invention is "Made" for the purposes of the CRADA when the invention is *first* actually reduced to practice; and (3) the first actual reduction to practice of Plaintiffs' now-patented armored vehicles was *during* the term of the CRADA, via the March 2007 test of fully assembled armored vehicles.  *See* CRADA License MSJ at 16–21; 27–29.[13]  Plaintiffs filed a response to Defendants' motion on July 31, 2019.  ECF No. 77 ("Pl. CRADA License Resp.").  On August 14, 2019, Defendants filed a reply.  ECF No. 81.

In addressing Defendants' motion for summary judgment, Judge Damich addressed what actions would satisfy the CRADA's licensing provision.  At the time he did so, the parties had not yet agreed upon facts to support a CRADA effective date of February 10, 2007; they had only stipulated the CRADA's effective date was "no later than February 20, 2007."  *Ideal Innovations v. United States*, 148 Fed. Cl. 385, 387 (2020); *but see* Federal Circuit Decision at *2 (noting the February 10, 2007, CRADA effective date).[14]  Judge Damich concluded that "if the first actual reduction to practice took place under the CRADA" — *i.e.*, after February 20, 2007, and before the CRADA expired — "it was within the scope of that agreement," which would give the government a license to the patents.  *Ideal Innovations*, 148 Fed. Cl. at 393.  Critically, Judge Damich identified two required elements for a finding of an actual reduction to practice: "(1) construction of an embodiment that meets all limitations [of the patent claims] and (2) a determination that

---

[12] Although Defendants labeled their motion as one for a motion to dismiss for lack of jurisdiction or, in the alternative, for summary judgment, both Judge Damich and the Federal Circuit considered the motion as one for summary judgment only.

[13] Defendants also made two additional, separate arguments in support of their contention that the government had a license to Plaintiffs' inventions.  CRADA License MSJ at 21–26.  Judge Damich ruled against the government on these arguments, *Ideal Innovations v. United States*, 148 Fed. Cl. 385, 394–95 (2020) (filed at ECF No. 113), and they do not appear to have been raised on appeal before the Federal Circuit, *see* Corrected Response Brief of the United States, *Ideal Innovations, Inc.*, 2021 WL 674522 (No. 2020-2065) (filed Feb. 15, 2021).

[14] Later, on June 18, 2020, the parties filed an updated stipulation, indicating that the CRADA was effective on February 10, 2007.  ECF No. 120.

the invention would work for its intended purpose." *Ideal Innovations*, 148 Fed. Cl. at 388 (citing *McDonnell Douglas Corp. v. United States*, 670 F.2d 156, 161, 163 (Ct. Cl. 1982)).[15]

Given the requirements of an actual reduction to practice, as Judge Damich defined it, he next had to determine which of several scenarios occurred given the undisputed facts. In theory, each element of actual reduction to practice could have first occurred: (a) before the CRADA's effective date or after its termination; (b) during the CRADA's effective period; or (c) never. If both elements were found to have occurred before the CRADA, then the first actual reduction to practice occurred before the CRADA, and thus the CRADA did *not* give the government a license to the inventions. If both elements first occurred during the CRADA's term, the CRADA gave the government a license to practice the inventions, and Defendants' motion should be granted. If one element occurred before the CRADA's effective date and the other occurred *while the CRADA was effective*, the first actual reduction to practice nevertheless occurred *during* the CRADA, yielding the government a license such that Defendants' motion should be granted. If one element never occurred or only occurred after the CRADA's term expired, there was no actual reduction to practice during the CRADA, and the government would not have a license.

On May 12, 2020, Judge Damich denied Defendants' summary judgment motion. *Ideal Innovations*, 148 Fed. Cl. at 395–96. With respect to the first element of actual reduction to practice — the construction of an actual physical embodiment that meets the patent claim limitations — Judge Damich "denied summary judgment specifically on the basis that the evidence did not establish whether the prototype vehicle was fully assembled before the CRADA's effective date," February 20, 2007 at the latest. Federal Circuit Decision at *3 (citing *Ideal Innovations*, 148 Fed. Cl. at 392–93)). Instead, Judge Damich agreed with Plaintiffs that certain HSUUV pictures might be evidence of "a fully assembled vehicle" more than ten days before the stipulated CRADA effective date. *Ideal Innovations*, 148 Fed. Cl. at 390 (quoting Pl. CRADA License Resp. at 15). Judge Damich thus permitted Plaintiffs to engage in "[d]iscovery [to] show these pictures evidence a fully assembled vehicle . . . before February 10, 2007, in the form of photographs and travel records." *Id.*

On the other hand, Judge Damich declined to definitively conclude that a full assembly of the inventions had preceded the CRADA. *Ideal Innovations*, 148 Fed. Cl. at 390–91 ("[T]he Court is puzzled why simple proof of the manufacture of the [invention] before February 20, 2007, eludes Plaintiffs (such that discovery is necessary). Didn't [Plaintiffs] design and manufacture it?"). Accordingly, Judge Damich found a dispute of

---

[15] As explained in more detail below, the Federal Circuit, while reversing Judge Damich as to his grant of summary judgment, essentially agreed with his basic definition of "actual reduction to practice." Federal Circuit Decision at *4 (citing *E.I. du Pont De Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1075 (Fed. Cir. 2019)).

material fact regarding when the inventions were first actually reduced to practice. *Id.* at 392–93.

With respect to Judge Damich's formulation of the second element of actual reduction to practice — that the constructed embodiment would work for its intended purpose — Judge Damich found that the intended purpose of the inventions at issue is "to protect soldiers against various kinds of explosives while preserving the mobility of the vehicle." Federal Circuit Decision at *7 (quoting *Ideal Innovations*, 148 Fed. Cl. at 392). Relying on the Federal Circuit's decision in *Scott v. Finney*, 34 F.3d 1058, 1063 (Fed. Cir. 1994), Judge Damich held that "the armored vehicle must be tested to see that it in fact protects soldiers as promised and that the vehicle is maneuverable." *Ideal Innovations*, 148 Fed. Cl. at 392.

Applying both elements of actual reduction to practice, Judge Damich concluded that, *at the latest*, the March 2007 tests of a fully assembled armored vehicle was "evidence of actual reduction to practice." *Ideal Innovations*, 148 Fed. Cl. at 391. In particular, he found that Plaintiffs' description of the March 2007 tests in their complaint constituted an admission "that in March 2007 there was *an* actual reduction to practice of the invention." *Id.* at 395 (emphasis added) (citing Compl. ¶ 25).[16] Accordingly, there was no question that "*[a]n* actual reduction to practice of the invention occurred under the CRADA." *Id.* at 396 (emphasis added). The unresolved question, however, was whether that was the ***first*** actual reduction to practice or whether "the first actual reduction to practice occurred before the effective date of the CRADA." *Id.* at 395 (emphasis added). That question, Judge Damich found, involved a dispute of material fact. Accordingly, Judge Damich ordered a mini-trial "to determine the date of the *first* actual reduction to practice of the invention." Federal Circuit Decision at *3 (emphasis added) (quoting *Ideal Innovations*, 148 Fed. Cl. at 395–96).

On May 28, 2020, Judge Damich held a status conference to discuss the mini-trial. *See* ECF No. 116 ("May 2020 Tr."). During this status conference, Plaintiffs admitted they could not document tests of a fully assembled vehicle before the CRADA's effective date, but instead argued that a person of ordinary skill in the art ("POSA") would have understood "based on the [March 10, 2006] coupon test fire" that the inventions would work for their intended purpose. Federal Circuit Decision at *3. In particular, "what [Plaintiffs] would hope to demonstrate, if the Court will . . . have the mini-trial, is that the actual claims of the patent[s], the '008 and the '648 patents, *had actually been reduced to practice by February the 1st [of 2007].*" May 2020 Tr. 9:11–15. The Plaintiffs' position was that "a [POSA] at that time, by February 1st, would have understood that the vehicle

---

[16] *See* Compl. ¶ 25 ("From March 5–19, 2007, [Ideal Innovations'] prototype vehicles were tested . . . . To the Government's astonishment, the prototype vehicles exhibited unmatched superior armor characteristics: EFPs could not penetrate the sides of the vehicle, and the armor system was light enough such that the vehicles maintained a high degree of mobility.").

would actually work for its intended purpose as claimed in the patents that are in suit." *Id.* 10:2–6; *see also id.* 20:5-12 (asserting actual reduction to practice of inventions by February 1, 2007).

On June 2, 2020, Judge Damich issued an order recapping the status conference. ECF No. 117.  He noted that Plaintiffs disagreed with his legal standard for actual reduction to practice and that Plaintiffs instead "argued that the full assembly of the armored vehicle, coupled with the test of the armor in March 2006, was sufficient to prove to a [POSA] that the armored vehicle was fit for its intended purpose, and they indicated that they were prepared to do that" in a mini-trial.  *Id.* at 1.  Judge Damich concluded that "in the interest of justice and out of caution, the Court will allow Plaintiffs to argue and present evidence at a mini-trial to prove that the assembly of the armored vehicle described in the patents, coupled with the testing of the armor in March 2006, was enough . . . to demonstrate that the invention worked for its intended purpose."  *Id.* at 2.  He further instructed that, at the mini-trial, Plaintiffs would have to "prove that the invention was fit for its intended purpose *before* the effective date of the CRADA, and, of course, they must prove that the invention was physically embodied before that date."  *Id.* at 3.

**To be clear, at no time did Plaintiffs assert before Judge Damich that the first actual reduction to practice either (1) never occurred or (2) occurred only after the CRADA expired.**

Judge Damich also ordered supplemental briefing about actual reduction to practice — specifically, "how the Court is to determine what is the intended purpose of the invention."  ECF No. 117 at 3; *see also* Federal Circuit Decision at *4 (citing ECF No. 117).  Plaintiffs filed their supplemental brief on June 18, 2020.  ECF No. 119.  Defendants filed their supplemental brief on June 23, 2020.  ECF No. 121.

On July 3, 2020, Judge Damich issued an Opinion and Order, in which he noted that "Defendants averred that a mini-trial was not necessary and [thus] renewed their request for summary judgment in their favor."  ECF No. 122 at 3; *see also* Federal Circuit Decision at *4.  Judge Damich noted, once again, that while Plaintiffs asserted that "Defendants cannot dispute that a fully operational, painted, tested and delivered BULL [the invention] was shown not later than February 22, 2007," ECF No. 122 at 2 (alteration in original) (emphasis omitted) (quoting ECF No. 77 at 15), Judge Damich had contemplated a mini-trial to "allow[] for the possibility of first actual reduction to practice on an earlier date," *id.* at 2 n.2.  But because Plaintiffs in their supplemental brief "admitted that the invention was not tested before the effective date of the CRADA in the manner required by the Court," Judge Damich saw no reason to proceed with the mini-trial.  *Id.* at 3 (concluding that "a mini-trial is not necessary" because "[e]ven if . . . there [were] a physical embodiment of the invention before the effective date of the CRADA (which is still not proved), it had to be tested in the way determined by the Court before the effective date of the CRADA"); *see also* Federal Circuit Decision at *4.

In sum, the key change from when Judge Damich initially rejected Defendants' summary judgment motion was Plaintiffs' admission that sufficient testing, in fact, had *not* been conducted prior to the CRADA. That new admission, in conjunction with Plaintiffs' existing admission that such testing *had* occurred during the CRADA, required granting Defendants' motion for summary judgment. In other words, the sole purpose of the planned mini-trial was to establish whether the *first* actual reduction to practice of the patented inventions occurred *before* or *during* the CRADA's term. Because of Plaintiffs' new admission, there was no reason for the mini-trial; the *first* actual reduction to practice clearly occurred during the CRADA and was covered by it. ECF No. 122 at 3.

Judge Damich concluded his July 3, 2020, Opinion and Order as follows:

> The Court grants Defendants' renewed Motion for Summary Judgment. The Court's Opinion in the initial motion found that the invention had to be actually tested before the effective date of the CRADA for the Court to conclude that it worked for its intended purpose and therefore was first actually reduced to practice before the effective date of the CRADA. The proper forum for examining whether this Court's reasoning on the need for actual testing is correct is an appeal to the Federal Circuit.

ECF No. 122 at 3. The Court entered judgment, ending the case in favor of the Defendants, and Plaintiffs commenced an appeal to the Federal Circuit. Federal Circuit Decision at *3–4.

### 6. Federal Circuit Appeal

On appeal, Plaintiffs-Appellants argued that Judge Damich erred in: (1) defining the inventions' intended purpose, *see* Federal Circuit Decision at *5 (citing Plaintiffs-Appellants' Corrected Opening Brief, Federal Circuit Decision (No. 2020-2065), 2020 WL 6504516, at *31 [hereinafter Plaintiffs-Appellants' Brief]);[17] (2) resolving "whether the *pre-CRADA* testing proved the invention worked for its intended purpose," which Plaintiffs argued was a disputed question of material fact, *id.* (emphasis added) (citing Plaintiffs-Appellants' Brief at *33–36); (3) giving too little weight to inventor testimony about whether an invention would work for its intended purpose, Plaintiffs-Appellants' Brief at *36–40; (4) applying too strict of a testing standard for actual reduction to practice, *see id.* at *40–44; and (5) limiting discovery contrary to what Plaintiffs sought, *id.* at *44–48. Plaintiffs also argued that "when properly interpreted, the CRADA cannot transfer rights in the patents to the Government." *Id.* at *48–55 (arguing amongst other things that the CRADA granted a license to armor but, somehow, not to armored vehicles). Plaintiffs

---

[17] Plaintiffs' opening appellate brief also appears on this case's docket at ECF No. 175-13.

did not appeal Judge Damich's finding that, in part because of Plaintiffs' admissions in their complaint, *an* actual reduction to practice occurred during the CRADA's effective period.  ECF No. 183, 13:3–9 (Plaintiffs' counsel confirming that "[w]e did not specifically appeal that issue").  That is, Plaintiffs did not deny that, at the latest, a reduction to practice occurred during the CRADA's term; instead, on appeal, they only sought an opportunity to prove that the *first* reduction to practice occurred prior to the CRADA's effective date.

Plaintiffs-Appellants' third argument is notable because it relied on the sufficiency of the March 10, 2006 coupon testing.  Based on Mr. Kocher's declaration about the March 10, 2006, test and its results, Plaintiffs argued that Judge Damich erred and that, instead, the "March 2006 testing[] . . . was all the testing required for actual reduction to practice."  *See* Plaintiffs-Appellants' Brief at *37 (citing Kocher Decl. ¶ 23).  Indeed, according to Plaintiffs, Mr. Kocher further indicated that "we had the vehicles assembled with armor configured on the cab by about February 1, 2007" as documented by "[p]hotographs of the vehicle from around that time."  *Id.* at *38 (quoting Kocher Decl. ¶ 22); *see id.* at *39 (showing the photographs); *see also* Plaintiffs-Appellants' Reply Brief, *Ideal Innovations*, 2021 WL 5754818 (No. 2020-2065), ECF No. 38, at 7–9 [hereinafter Plaintiffs-Appellants' Reply] ("[W]ith the March 2006 coupon testing . . . , Mr. Kocher had all the testing needed for actual reduction to practice." (citing Kocher Decl. ¶ 23)) (also filed at ECF No. 177-7).[18]

On December 3, 2021, the Federal Circuit issued its decision.  The Federal Circuit essentially agreed with Judge Damich regarding the test for actual reduction practice: "[a]ctual reduction to practice, at issue here, occurs when an inventor (1) constructs an embodiment or performs a process that meets all the limitations of the claimed invention, and (2) determines that the invention would work for its intended purpose."  Federal Circuit Decision at *4 (citing *Unifrax I*, 921 F.3d at 1075).  The Federal Circuit noted, however, that "[w]hether an invention has actually been reduced to practice is a legal question based on subsidiary factual findings."  *Id.* (citing *Taskett v. Dentlinger*, 344 F.3d 1337, 1339 (Fed. Cir. 2003)).  One of those subsidiary questions relates to the question of

---

[18] Plaintiffs-Appellants' reply brief appears on this case's docket at ECF No. 177-7.  Although Plaintiffs-Appellants' second and fourth arguments both concern testing in the context of actual reduction to practice, they are distinguishable: the former concerned what the March 10, 2006, coupon test showed, and the latter asserted that actual reduction to practice did not require testing in field conditions as Judge Damich indicated.  *Compare* Federal Circuit Decision at *5 (discussing Plaintiffs-Appellants' Brief at *33–36 and citing Kocher Decl. ¶ 23 about the coupon test); Plaintiffs-Appellants' Brief at *34 ("The key question was whether *the coupon testing*, once completed, would have demonstrated to a skilled artisan that the invention would work for its intended purpose." (emphasis added)), *with* Plaintiffs-Appellants' Brief at *41 ("Here the CFC required testing far beyond whether the wheeled vehicle could maneuver with armor configured as in the claims[.]").

required testing.  According to the Federal Circuit, "[w]hether testing is necessary to determine an invention works for its intended purpose and whether a given test method is sufficient are questions of fact."  *Id.* at *5 (citing *Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1322 (Fed. Cir. 2019), *z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1349 (Fed. Cir. 2007), and *Scott*, 34 F.3d at 1061).  As part of an actual reduction to practice analysis, the identification of an invention's intended purpose "is a legal question considered in light of the claims and specifications."  Federal Circuit Decision at *5 (citing *Manning v. Paradis*, 296 F.3d 1098, 1102–04 (Fed. Cir. 2002)).

Applying those rules, the Federal Circuit first held that Judge Damich "did *not* err in determining the intended purpose of the invention."  Federal Circuit Decision at *5 (emphasis added).  The Federal Circuit thus expressly affirmed Judge Damich's conclusion that "[t]he intended purpose of the invention is to protect soldiers against various kinds of explosives while preserving [the] mobility of the vehicle."  *Id.* (quoting *Ideal Innovations*, 148 Fed. Cl. at 392).

Next, regarding the sufficiency of testing issue, the Federal Circuit disagreed with Judge Damich.  Federal Circuit Decision at *6.  While Judge Damich had "concluded that the invention was not reduced to practice before the CRADA's effective date because no fully assembled vehicle was tested before that date," Plaintiffs-Appellants "maintain[ed] *that the March 2006 coupon testing* was sufficient because Kocher testified that the coupon testing proved the armor could withstand attacks from EFPs, and it was easy to calculate whether a commercially available vehicle chassis — with a known weight capacity — could be mobile while supporting the weight of the armor."  *Id.* at *5 (emphasis added).  According to Plaintiffs-Appellants, "a reasonable factfinder could find that *the coupon testing* was sufficient to show that the invention worked for its intended purpose."  *Id.* (emphasis added).  The Federal Circuit agreed with Plaintiffs-Appellants, reversing Judge Damich's grant of summary judgment in favor of Defendants.

Ultimately, the Federal Circuit concluded that there was a genuine dispute of material fact that had to be resolved via trial; specifically, this Court would have to conduct a mini-trial (as Judge Damich originally contemplated) to determine "whether a POSA would have known, *based on the coupon testing*, that the invention would work for its intended purpose."  *Id.* *6 (emphasis added) (citing cases).  As a result, the Federal Circuit held that "[t]he [Court of Federal Claims] erred when it granted summary judgment based on its resolution of *that* disputed factual issue."  *Id.* (emphasis added).[19]

---

[19] Judge Hughes filed a concurring opinion in this appeal.  Federal Circuit Decision at *6 (Hughes, J, concurring).  Although Judge Hughes agreed that Judge Damich erred in requiring certain types of testing as a matter of law, he attributed the error to Plaintiffs' failure to adequately frame the issue until the appeal.  *Id.* at *8–9 ("Appellants never fully briefed the issue of testing nor

If at trial the evidence showed that pre-CRADA testing was sufficient for a POSA to determine that that the HSUUVs would work for their intended purpose, Plaintiffs would succeed in demonstrating that Defendants did not have a license pursuant to the CRADA. Again, neither Plaintiffs nor the Federal Circuit identified any issue with Judge Damich's conclusion regarding the sufficiency of the March 2007 tests, which occurred during the term of the CRADA, to demonstrate an actual reduction to practice. In other words, the only open question, in terms of the CRADA, was whether Plaintiffs could show that an earlier actual reduction to practice than what Defendants asserted.

The Federal Circuit's mandate issued on January 25, 2022. ECF No. 130.

### 7.  Post-Remand Proceedings

On February 28, 2022, the case was reassigned from Judge Damich to Judge Lerner. ECF No. 133. Judge Lerner held a status conference with the parties on March 14, 2022, during which she reviewed the pending issues for the Court's resolution. ECF No. 139 ("Mar. 2022 Tr.").[20] Judge Lerner asked each party "what remains to be decided on remand and how best to get this case ready for final resolution." Mar. 2022 Tr. 7:1–7. In answering Judge Lerner's question, Plaintiffs made very clear how they viewed this Court's task on remand from the Federal Circuit:

> [I]f, in fact, there was not an actual reduction to practice *before* the CRADA was signed, [then] under the terms of the agreement between the Plaintiffs and the Government, *that would mean that the Government got a license* and, therefore, had what amounts to an affirmative defense. ***And there's no really [sic] dispute about that.***
>
> *What is hotly disputed* and what remains hotly disputed after the Federal Circuit's remand is the factual predicate of whether, in fact, there was an actual reduction to practice *before* the CRADA was executed.

Mar. 2022 Tr. 8:13–24 (emphases added).

On April 20, 2022, Judge Lerner issued a scheduling order for discovery, claim construction proceedings, and dispositive motions. ECF No. 142. That order set fact discovery to conclude on March 31, 2023. *Id.*

---

clearly challenged it as a factual issue to the trial court, hardly placing the court on notice that there was a factual dispute regarding coupon testing as sufficient testing to reduce to practice.").

[20] The transcript also appears on the docket at ECF No. 175-15.

On October 27, 2022, this case was reassigned to the undersigned judge.  ECF No. 144.  The following day, Defendants served their first requests for production of documents.  ECF No. 173-1.  Two requests were for documents that supported Plaintiffs' contention that the inventions were "actually reduced to practice no later than March 10, 2006, when armor tests were completed."  *Id.* at 9; *see also* ECF No. 81-1 at 276 (Plaintiffs' June 3, 2019, amended initial disclosures) ("Plaintiffs contend . . . that actual reduction to practice occurred no later than March 10, 2006, when armor tests were completed").  Defendants also served Plaintiffs with interrogatories.  *See* ECF No. 175-14 (Plaintiffs' responses to Defendants' interrogatories, filed at ECF No. 177-2).  One of Defendants' interrogatories related to actual reduction to practice and was specific to Plaintiffs' contention that "actual reduction to practice occurred no later than March 10, 2006."  *See id.* at 8 (quoting ECF No. 81-1 at 276).[21]

On November 30, 2022, the Court held a status conference to discuss the pending matters and motions requiring resolution and the order in which they should be addressed.  During that status conference, the parties agreed the pending matters for the Court's resolution were:  (1) claim construction; (2) the motion for summary judgment based on the on-sale bar, 35 U.S.C. § 102(b), ECF No. 73; and (3) the reduction to practice timing issue the Federal Circuit remanded for trial.  *See* ECF No. 153 ("Nov. 2022 Tr.") at 5–7.[22]  Based on the status conference, the Court instructed the parties to propose a schedule for how the case should proceed.  ECF No. 150.  The parties filed a joint status report ("JSR") on December 14, 2022, proposing a schedule.  ECF No. 151.

On December 22, 2022, the Court vacated the pending deadlines and issued a scheduling order in line with the parties' proposal in their JSR.  ECF No. 154.[23]  With

---

[21] On December 9, 2022, Plaintiffs served Defendants with their objections and responses to Defendants' first requests for production.  ECF No. 173-2 at 32 (responding to requests filed at ECF No. 173-1).  On the same day, Plaintiffs provided their objections and responses to Defendants' first set of interrogatories.  ECF No. 175-14.  In response to the interrogatory about actual reduction to practice on March 10, 2006, Plaintiffs noted "[t]he inventions . . . were first actually reduced to practice in early February 2007 before the [CRADA]."  *Id.*

[22] This transcript also was filed on the docket at ECF No. 175-16.

[23] The on-sale bar MSJ and claim construction together had only one scheduled item on the December 22, 2022 scheduling order: oral argument.  ECF No. 154.  In accordance with the scheduling order, the Court held oral argument on February 7–8, 2023.  *See* ECF No. 162 (transcript of the claim construction hearing); ECF No. 163 (transcript of the oral argument regarding the on-sale bar MSJ).  On February 14, 2023, the Court ordered supplemental briefing on claim construction, which the parties filed on April 14, 2023.  ECF No. 164 (the Court's order); ECF No. 166 (Plaintiffs' supplemental brief); ECF No. 167 (Defendants' supplemental brief).  Given the resolution of this case as detailed herein, the Court does not reach either the claim construction or the on-sale bar issues.

respect to the issue the Federal Circuit remanded for trial, the Court set deadlines for fact discovery (March 3, 2023), expert discovery (May 5, 2023), and exhibit and witness lists (May 8, 2023). ECF No. 154 at 2. The Court also ordered a mini-trial on the remanded issue for June 27–28, 2023. *Id.* On May 8, 2023, the parties filed exhibit and witness lists. *See* ECF Nos. 168–71.

### 8.   Defendants' Motion to Vacate and Motion for Discovery Sanctions

On May 23, 2023, Defendants filed a motion to vacate the December 22, 2022 scheduling order and to cancel the mini-trial. ECF No. 173 ("Def. Mot. Vacate"). The parties' briefs on this motion informed the Court of events that had transpired during discovery and the period immediately preceding the then-scheduled mini-trial. The Court, in this subsection, describes the events leading to Defendants' motion to vacate the mini-trial.

On January 18, 2023, Defendants sent Plaintiffs a letter challenging Plaintiffs' December 9, 2022 discovery responses. ECF No. 173-3 at 2 ("Plaintiffs' response is deficient in that it does not identify any corroborating documents for the purported actual reduction to practice. . . . The response fails to demonstrate when an embodiment that meets all limitations of the asserted claims was completely constructed[.]").[24] On March 16, 2023, Defendants "request[ed] that [Ideal Innovations] immediately supplement its production of documents" because "recently produced documents and deposition testimony indicate that [Ideal Innovations'] current production is deficient." ECF No. 173-5 at 2.

On April 11, 2023, opposing counsel met-and-conferred regarding the state of discovery. As a result, Plaintiffs agreed to conduct additional searches of electronically stored information. ECF No. 173-6 (email correspondence). According to Plaintiffs, at some point after counsel's April 11, 2023, conversation, "[Plaintiffs'] counsel discovered the existence of a[n] [archive of Mr. Kocher's emails] in its possession that previously had been provided to counsel." ECF No. 175-1, ¶ 5 (declaration of Plaintiffs' counsel of record). Mr. Kocher had provided his counsel with "individual emails and a .pst archive of [his] emails covering the relevant time period" back "[i]n the earliest stages of this lawsuit." *See id.* ¶ 2.[25] It turned out, however, that "unbeknownst to" Mr. Kocher's present counsel of record, and "due to a technical oversight, the .pst file containing Mr.

---

[24] This letter appears at both ECF No. 173-3 and ECF No. 180-5. Plaintiffs answered Defendants' letter on January 26, 2023. ECF No. 173-4 at 2 (also filed at ECF No. 180-6).

[25] "Files in .pst format contain e-mails and other Microsoft Outlook data stored on a user's computer, including drafts, sent messages, contacts, appointments, tasks, notes, and journal entries." *Russell v. Kiewit Corp.*, 2019 WL 2357525, at *2 & n.13 (D. Kan. June 4, 2019) (citing "How to Manage .pst Files in Microsoft Outlook," *Microsoft*, https://support.microsoft.com/en-us/help/287070/how-to-manage-pst-files-in-microsoft-outlook (accessed June 4, 2019)).

Kocher's archived emails had not fully been searched." *See id.* ¶ 4. The parties did not inform the Court of these discovery issues as they were brewing.

On May 8, 2023, the parties' counsel conferred once again. This time, Plaintiffs indicated they "would be making a supplemental production." ECF No. 175-1, ¶ 6. On May 11, 2023, Plaintiffs provided Defendants with 1,131 pages of new documents. ECF No. 175-1, ¶ 6. Among these documents were emails dated February 13, 2007 — *i.e.*, three days *after* the stipulated date of the CRADA's final signature, *see* ECF No. 120 — revealing that construction of the prototype HSUUVs remained incomplete as of that date. *See* ECF No. 173-12 at 2 (email noting that the first vehicle was "no where close to complete"); ECF No. 173-13 at 2–3 (email noting that "[t]he base cab is installed on the chassis and they are getting ready to start laying the armor plate on").

The newly disclosed emails clearly demonstrate that a physical embodiment was *not* complete before the CRADA's effective date, which means that the first actual reduction to practice did not occur before the CRADA's term began. In other words, the March 10, 2006 coupon test (and how the inventor understood its results) was rendered irrelevant. That is because testing — even if a POSA believed it sufficient to demonstrate that an invention *would* work for its intended purpose — is insufficient without an actual embodiment that meets the relevant claim limitations. *See* Federal Circuit Decision at *4 ("Actual reduction to practice, at issue here" requires an inventor to "construct[] an embodiment or perform[] a process that meets all the limitations of the claimed invention"); *see also Unifrax I*, 921 F.3d 1060, 1075 ("To establish an actual reduction to practice, . . . 'the inventor must prove that . . . he constructed an embodiment or performed a process that met all the limitations[.]'" (quoting *Cooper*, 154 F.3d at 1327)).

On May 12, 2023, the day after Plaintiffs produced the 1,131 new pages of documents, Defendants informed Plaintiffs that the new documents "contradict [Ideal Innovations'] legal theories and witness statements." ECF No. 173-9 at 4. The parties' counsel conferred again on May 15 and 19, 2023. ECF No. 173-9 at 2.

On May 22, 2022, Plaintiffs informed Defendants that Plaintiffs intended to entirely change their contentions regarding the first actual reduction to practice question:

> [I]n light of the development of the evidence in this case, Plaintiffs do *not* intend to present argument at the mini-trial in support of the theory that an actual reduction to practice of the patented inventions occurred *before* the stipulated February 10, 2007 effective date of the CRADA. However, as you are aware, in order for [Defendants] . . . to prevail on its license defense, there still must have been an actual reduction to practice during the term of the CRADA. In light of the evidence . . . , Plaintiffs maintain their argument that the

> government is not licensed because *there never was an actual*
> *reduction to practice during the period of, and as that term is used*
> *in, the CRADA*. Also, as previously explained, Plaintiffs
> intend to maintain their argument that *the CRADA does not*
> *apply at all*.

ECF No. 173-9 at 2 (emphases added).

The next day, Defendants filed their motion to vacate.  *See* Def. Mot. Vacate.
According to Defendants, "[t]he Federal Circuit remanded the case to resolve a narrow
factual dispute over whether a [POSA] would have known based on the March 2006
coupon testing that [Plaintiffs'] invention would work for its intended purpose." *Id.* at 8
(citing Federal Circuit Decision at *5–6).  Because Plaintiffs "now concede that their late
document production provided evidence mooting the narrow issue" on remand,
Defendants asked the Court to vacate the date for the mini-trial.  *Id.* at 3–4.[26]

On May 30, 2023, Plaintiffs responded to Defendants' motion to vacate the then-
pending scheduling order and to cancel the mini-trial.  *See* ECF No. 175 ("Pl. Resp. to Def.
Mot. Vacate").  Commenting on the testing element of actual reduction to practice,
Plaintiffs continued to assert that "the evidence adduced in this matter is sufficient to
show that a [POSA] would have understood, *before* the CRADA was signed, that the
invention would work for its intended purpose." *Id.* at 4 (emphases added).  Plaintiffs
conceded, however, that they cannot meet the Federal Circuit's other, independent
element for actual reduction to practice: "the evidence that has been adduced in this
matter does not appear sufficient to corroborate Mr. Kocher's recollection of *the*
*construction of an embodiment* before February 10, 2007." *Id.* at 4–5 (emphases added)
(referring to the CRADA's stipulated effective date, *see supra* note 14).[27]

---

[26] In Defendants' motion to vacate, Defendants once again argue that "[t]he [CRADA] licensing
issue presents a jurisdictional question."  Def. Mot. Vacate at 4 (arguing, based on 28 U.S.C.
§ 1498(a), that Plaintiffs have the burden to demonstrate that Defendants lack a license to practice
the inventions at issue); *see also* CRADA License MSJ at 13–15 ("Congress . . . conditioned
§ 1498(a)'s waiver on the plaintiff's ability to allege and show that use or manufacture of an
invention occurred 'without license of the owner thereof or lawful right to use or manufacture
the' invention." (quoting 28 U.S.C. § 1498(a))).  Neither Judge Damich nor the Federal Circuit
addressed the jurisdictional implications of the license issue pursuant to 28 U.S.C. § 1498.
Plaintiffs oppose Defendants' view, characterizing the existence of a license as an affirmative
defense that Defendants bear the burden to demonstrate.  ECF No. 175 at 8–12 (citing cases).

[27] *But see* Pl. Resp. to Def. Mot. Vacate at 10 (arguing that "the government still needs to show
there as an actual reduction to practice during the term of the CRADA" because Plaintiffs
statements "do[] not mean they have conceded that the government has a license . . . , especially
under the requirements that the Court set for an actual reduction to practice in this case" (citing
*Ideal Innovations*, 148 Fed. Cl. at 388-91 (addressing testing requirements))).

Furthermore, Plaintiffs' counsel of record indicated in this response that he believed that he (and his predecessors) had produced "all relevant and responsive materials" until he learned otherwise as the result the March 2023 depositions.  Pl. Resp. to Def. Mot. Vacate at 1–2.  While Plaintiffs admitted that the newly produced documents had never before been provided to Defendants, Plaintiffs argued that Defendants already possessed a majority of the emails that Defendants' motion to vacate cited.  *Id.* at 2–4 (discussing, amongst others, the email at ECF No. 173-12).  Plaintiffs also asserted that they previously had argued and thus preserved the arguments that:  (1) the invention was never reduced to practice during the CRADA; and (2) the CRADA's scope does not cover the invention.  *Id.* at 7–8, 12–13.

On June 2, 2023, Defendants filed a reply brief in support of their motion to vacate the mini-trial, challenging Plaintiffs' response in several ways.  First, Defendants argued that the Federal Circuit's decision and remand precluded Plaintiffs' new arguments about the CRADA's scope and that the undisturbed portions of Judge Damich's decisions remained the law of the case.  ECF No. 176 at 7–12.  Second, Defendants asserted that discovery following remand definitively resolved any triable issues of fact for which the Federal Circuit previously remanded the case.  *Id.* at 12–15.  Third, Defendants asked the Court to cancel the planned mini-trial because — even assuming a mini-trial were warranted — Defendants, at a minimum, would need additional time for discovery about whether an actual reduction to practice occurred during the CRADA.  *Id.* at 15–17.

Separate from Defendants' motion to vacate, Defendants filed, also on June 2, 2023, a related motion for discovery-related sanctions, pursuant to RCFC 37(c).  ECF No. 177 ("Sanction Mot.").  Defendants ask the Court to prevent Plaintiffs from relying upon the documents first produced on May 11, 2023, or from arguing that there was no actual reduction to practice during the CRADA.  *Id.* at 15–16; *see id.* at 9 ("[A]ny theory other than that the inventions were first actually reduced to practice in early February 2007 is a surprise to the Defendants.").  Defendants contend that, until May 2023, Plaintiffs never disclosed an alternative theory to the one they had maintained throughout this litigation (*i.e.*, that the first actual reduction to practice occurred before the CRADA).  *Id.* at 2–5.  Defendants thus ask the Court to prevent Plaintiffs from arguing that the invention was first reduced to practice "at any time other than 'early February 2007.'"  *Id.* at 16 (quoting Plaintiffs' interrogatory responses filed at ECF No. 177-2).

In opposition to Defendants' motion for sanctions, Plaintiffs admit they "have *always* maintained — and continue to believe — that the first actual reduction to practice of the inventions . . . occurred before the effective date of the CRADA, inasmuch as there was a showing the inventions worked for their intended purposes."  ECF No. 180 ("Pl. Sanction Resp.") at 5–6 (emphasis added).  Nevertheless, Plaintiffs concede that they cannot prove the first actual reduction to practice occurred before the CRADA.  Instead, they argue that the Federal Circuit remanded the case to consider the "scope of testing

required," which Plaintiffs cite as grounds to argue the inventions were never reduced to practice during the CRADA. *Id.* at 21–23 (quoting Federal Circuit Decision at *5). Plaintiffs further insist that Defendants were aware that Plaintiffs would argue the inventions were not actually reduced to practice during the CRADA. *Id.* at 1–2, 6–7, 14–15 (citing Plaintiffs-Appellants' Brief at *43–44).

### 9. Defendants' Second Renewal of Their Motion to Dismiss or for Summary Judgment

On June 13, 2023, the Court held a hearing on Defendants' motions to vacate and for discovery sanctions. ECF No. 183 ("Sanctions Hearing Tr."). During that hearing, Plaintiffs confirmed they "do not want the opportunity to try to establish a pre-February 10th, 2007, actual reduction to practice." Sanctions Hearing Tr. 11:13–17.

There were several critical developments during that hearing. First, Plaintiffs agreed that they never amended their December 9, 2022 response to the government's interrogatory in which Defendants asserted that "[t]he inventions . . . were first actually reduced to practice in early February 2007 before the [CRADA]." Sanctions Hearing Tr. 18:4–11, 20:7 (quoting ECF No. 177-2). Plaintiffs now concur that their interrogatory response is "false," and effectively seek to withdraw it. *Id.* Second, Plaintiffs recognized that, if this Court's "ruling is that the Federal Circuit implicitly ruled that the CRADA did apply" to the inventions, "then we would agree that . . . [we] wouldn't be able to make that argument before [the Court] now." Sanctions Hearing Tr. 45:15–25.

Defendants, for their part, orally renewed their motion "either to dismiss for lack of jurisdiction or for summary judgment on the same grounds[.]" Sanctions Hearing Tr. 51:18–21 (referring to the July 3, 2019 CRADA License MSJ). Plaintiffs agreed that there is no need for Defendants to file another written motion. *Id.* 50:10-17.

After considering Defendants' arguments, the Court, also on June 13, 2023, granted Defendants' motion to vacate the scheduling order and canceled the mini-trial, at least for the time being, so that the Court could consider Defendants' motion for sanctions and their renewed motion for summary judgment. ECF No. 181 at 2.

## II.   STANDARD OF REVIEW

### A. Jurisdiction

As described above, the parties have conflicting views about whether the non-existence of a license to practice an invention is a jurisdictional fact that a plaintiff must allege and prove or is an affirmative defense for which a defendant bears the burden of proof.

This Court has an independent duty to ensure that it has jurisdiction over any asserted claim. *See St. Bernard Parish Gov't v. United States*, 916 F.3d 987, 992–93 (Fed. Cir. 2019); RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

The basis of a patent infringement suit against the United States is 28 U.S.C. § 1498. *See Golden v. United States*, 955 F.3d 981, 987 (Fed. Cir. 2020) ("28 U.S.C. § 1498 provides the only avenue for a patent owner to bring an action against the government for patent infringement.").[28]  In relevant part, 28 U.S.C. § 1498 reads:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States *without license of the owner thereof* or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

28 U.S.C. § 1498(a) (emphasis added).

As interpreted by the Federal Circuit sitting *en banc*, this statute:

> [W]aives the Government's sovereign immunity from suit when (1) an invention claimed in a United States patent; (2) is "used or manufactured by or for the United States," meaning each limitation is present in the accused product or process; and (3) *the United States has no license* or would be liable for direct infringement of the patent right for such use or manufacture if the United States was a private party.

*Zoltek*, 672 F.3d at 1319 (*en banc* in relevant part) (emphasis added) (quoting 28 U.S.C. § 1498(a)); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").

---

[28] *See also Zoltek Corp. v. United States*, 672 F.3d 1309, 1317 (Fed. Cir. 2012) (decision *en banc* "for the limited purpose of vacating" an opinion that "found liability under 35 U.S.C. § 271(a) to be a predicate to government liability under § 1498"); *Bondyopadhyay v. United States*, 149 Fed. Cl. 176, 185 (2020), *aff'd*, 850 F. App'x 761 (Fed. Cir. 2021) ("The United States has waived sovereign immunity over patent infringement claims against the federal government and its contractors, and has provided the United States Court of Federal Claims with jurisdiction to hear such claims, under 28 U.S.C. § 1498(a).").

In *Technical Development Corp. v. United States*, 220 Ct. Cl. 128 (1979) (per curiam), the Federal Circuit's predecessor court, the United States Court of Claims, considered whether the government possessed a license to a patented invention and therefore was not liable pursuant to 28 U.S.C. § 1498. In that case, the Court of Claims held that the government "bears the burden of proof on the license defense," yet "[i]f the defendant proves that the invention was reduced to practice in the performance of . . . a [particular] Government contract, then the burden shifts to the plaintiff to prove that a first actual reduction to practice of the invention occurred prior to the award of the contract." *Tech. Dev. Corp. v. United States*, 220 Ct. Cl. at 151–52. In this case, this Court need not definitively resolve the parties' jurisdictional dispute because the record evidence conclusively demonstrates that the government had a license via the CRADA to practice the inventions at issue. Whatever the nature of the licensing issue — *i.e.*, whether it is jurisdictional or is an affirmative defense — Defendants win.

## B. Summary Judgment

This Court is required to grant summary judgment for a claim or defense "if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); *see* Federal Circuit Decision at *4 (applying RCFC 56(a)). A nonmoving party can identify a genuine dispute and overcome summary judgment through "an 'evidentiary conflict created on the record' as to any material issue of fact." Federal Circuit Decision at *4 (quoting *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984)). The Court "view[s] the facts supported by evidence, as well as all inferences drawn therefrom, in the light most favorable to the non-moving party." Federal Circuit Decision at *4 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Facts that are material "might affect the outcome of the suit" according to the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (contrasting material facts with "irrelevant or unnecessary" ones).

The Federal Circuit recognized in this case that Ideal Innovations and the government entered into a CRADA that granted both parties license to inventions "Made" pursuant to the agreement. Federal Circuit Decision at *1 (citing CRADA § 7.4.5.1). According to the CRADA, an invention is "Made" through its "first actual reduction to practice." *Id.* (citing CRADA § 1.15).

As explained *supra*, the Federal Circuit in this case held:

> Actual reduction to practice, at issue here, occurs when an inventor (1) constructs an embodiment or performs a process that meets all the limitations of the claimed invention, and (2) determines that the invention would work for its intended

> purpose.  Whether an invention has actually been reduced to
> practice is a *legal question* based on *subsidiary factual findings*.

Federal Circuit Decision at *4 (emphases added) (internal citations omitted).  Although a conclusion about reduction to practice is a matter of law, "whether a POSA would have known, based on the coupon testing, that the invention would work for its intended purpose" is a question of material fact.  Federal Circuit Decision at *6 (citing *Barry*, 914 F.3d at 1322); *see id.* at *7, 9 (Hughes, J., concurring) ("[T]he sufficiency of testing is a question of fact, not law.").

Accordingly, the material *factual* question for this Court to resolve is "whether a POSA would have known, based on the [March 10, 2006,] coupon testing, that the invention would work for [the above-quoted] intended purpose."  Federal Circuit Decision at *6.  For the reasons explained below, the Court finds that question is moot because Plaintiffs concede there was no embodiment of the invention prior to the CRADA's effective date.  Because there was no embodiment meeting the patent claim limitations before the CRADA's effective date, the inventions were not actually reduced to practice prior to the CRADA's effective date.  That leaves this Court with the only other factual scenario presented to, and considered by, either Judge Damich or the Federal Circuit:  the first actual reduction to practice occurred during the CRADA's term.  There is now no genuine dispute of material fact remaining for this Court to resolve about the first actual reduction to practice; the facts require the Court to grant Defendants' renewed motion for summary judgment.

## C.  Discovery and RCFC 37 Sanctions

The Supreme Court of the United States has characterized the modern discovery process[29] "as a device[] . . . to narrow and clarify the basic issues between the parties[.]" *Hickman v. Taylor*, 329 U.S. 495, 501 (1947); *see In re MSTG, Inc.*, 675 F.3d 1337, 1346 (Fed. Cir. 2012) ("In general, the Federal Rules of Civil Procedure promote a 'broad and liberal' policy of discovery 'for the parties to obtain the fullest possible knowledge of the issues and facts before trial.'" (quoting *Hickman*, 329 U.S. at 501, 507)).[30]

---

[29] "[I]nterpretation of [this] court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure [FRCP]."  RCFC 2002 Rules Committee Note; *see Kan. City Power & Light Co. v. United States*, 132 Fed. Cl. 28, 32 n.1 (2017) (quoting the same); Rules Committee Notes on RCFC 34, 2016 Amendment (noting the latest RCFC 34 changes to match "the corresponding changes" in FRCP 34).

[30] *See also United States v. Procter & Gamble Co.*, 356 U.S. 677, 682–83 (1958) ("Modern instruments of discovery serve a useful purpose, as we noted in [*Hickman*].  They together with pretrial procedures make a trial . . . more a fair contest with the *basic issues* and facts disclosed to the fullest practicable extent." (emphasis added) (citing *Hickman*, 329 U.S. at 501)); *O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006) ("[D]iscovery is designed to allow

RCFC 26(a) requires parties to make certain initial disclosures "without awaiting a discovery request." *See* RCFC 26(a)(1). The Court's rules also mandate responses to discovery requests, including interrogatories, *see* RCFC 33, and requests for production of documents, *see* RCFC 34. The purpose of such discovery tools is to "ascertain the theories underlying a party's case and the facts that support those theories." *City of Fresno v. United States*, 2021 WL 347750, at *2 (Fed. Cl. Feb. 1, 2021) (citing *Exxon Rsch. & Eng'g Co. v. United States*, 44 Fed. Cl. 597, 601 (1999)).

Pursuant to RCFC 26(e)(1):

> A party who has made a disclosure under RCFC 26(a) — or who has responded to an interrogatory, request for production, or request for admission — must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material response the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]

RCFC 26(e)(1), (e)(1)(A). As the Federal Circuit has recognized, what a party discloses through discovery "evolve[s] over time as theories of liability, defense, and relief begin to take shape and . . . may not come into focus until the end of discovery." *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1372 (Fed. Cir. 2021) (citing *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed Cir. 2012)). RCFC 26(e) thus "expressly requires that as theories mature and as the relevance of various items of evidence changes," a party "must . . . correct[] or supplement[]" its disclosures and discovery responses "to reflect those changes." *Id.* Failure to meet this obligation carries consequences: "If a party fails to provide information . . . as required by RCFC 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . [and] the

---

the defendant to pin down the plaintiff's theories of liability and to allow the plaintiff to pin down the defendant's theories of defense, thus confining discovery and trial preparation to information that is pertinent to the theories of the case." (citing *Hickman*, 329 U.S. at 501 and other sources)); FRCP 33 Advisory Committee Notes 1970 Amendment ("[N]arrowing and sharpening the issues [through interrogatories and other discovery tools] . . . is a major purpose of discovery." (citing sources)); FRCP 26 Advisory Committee Notes 1983 Amendment ("[T]he spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons . . . [by] unnecessary use of defensive weapons or evasive responses. All of this results in excessively costly and time-consuming activities[.]"); 8 Richard L. Marcus, Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2001, Westlaw (database updated Apr. 2023) ("[T]he discovery rules do not provide a series of isolated devices. They are, instead, an integrated mechanism for *narrowing the issues* and ascertaining the facts." (emphasis added) (citing cases)).

court . . . may order payment of the reasonable expenses . . . [and] impose other appropriate sanctions[.]"  RCFC 37(c)(1)(A)–(C).

"The decision whether to impose discovery sanctions rests within the sound discretion of the trial court."  *Adkins v. United States*, 816 F.2d 1580, 1581 (Fed. Cir. 1987) (citing *Ingalls Shipbuilding, Inc. v. United States*, 857 F.2d 1448, 1450 (Fed. Cir. 1988))

## III.   DISCUSSION—DEFENDANTS   ARE   ENTITLED   TO   SUMMARY   JUDGMENT

While the Federal Circuit expressly found that *an* actual reduction to practice occurred during the CRADA's term, the Federal Circuit also concluded Plaintiffs should have had an opportunity to prove to this Court that the inventions were *first* reduced to practice prior to the CRADA.  Now, however, Plaintiffs concede that they cannot prove that pre-CRADA efforts — including the March 10, 2006 coupon test — demonstrate actual reduction to practice of the inventions at issue for the simple reason that there was no completed embodiment at that time.  *See* Pl. Resp. to Def. Mot. Vac. at 4–5; ECF No. 173-9 at 2.  Accordingly, the undisputed record evidence demonstrates that the first actual reduction to practice occurred during the CRADA.  Indeed, had Plaintiffs made the same concession before the Federal Circuit that they now make before this Court, it is obvious that Judge Damich would have been affirmed.  Because the inventions at issue were first reduced to practice during the CRADA, that, in turn, means the government has a license to practice the inventions and Plaintiffs' remaining infringement claims fail — whether for lack of jurisdiction or because Defendants' have substantiated an affirmative defense. Either way, Defendants win.

To the extent Plaintiffs now seek the opportunity to argue that the inventions were not covered by the CRADA or were not actually reduced to practice until after the CRADA expired, those paths are foreclosed for three reasons:  (1) they contravene the Federal Circuit's mandate; (2) they are barred by judicial estoppel; and (3) the Court, in the alternative, imposes sanctions, prohibiting Plaintiffs from doing a 180-degree turn this late in the game.

### A.  The Federal Circuit's Mandate Requires this Court to Grant Summary Judgment to Defendants

This Court, of course, must adhere to the "familiar doctrine that a lower court is bound to respect the mandate of an appellate tribunal and cannot reconsider questions which the mandate has laid at rest."  *Fed. Commc'ns Comm'n v. Pottsville Broad. Co.*, 309 U.S. 134, 140 (1940); *see also Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948) ("[A]n inferior court has no power or authority to deviate from the mandate issued by an appellate court.").  Put differently, after an appellate court has decided a case and remanded it to a lower court, the latter "is bound by the decree as the law of the case, and must carry it

into execution . . . . That court cannot vary it, or examine it for any other purpose than execution; . . . or review it, even for apparent error, upon any matter decided on appeal[.]" *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895).

Applying those general principles, the Federal Circuit has explained that the "mandate rule" precludes both the appellate court and the trial court from reconsidering "issues implicitly or explicitly decided on appeal." *TecSec, Inc. v. Int'l Bus. Machs. Corp.*, 731 F.3d 1336, 1341–42 (Fed. Cir. 2013) (quoting *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1364 (Fed. Cir. 2008)). An appeal implicitly decided an issue if the issue was "necessary to [the appellate court's] disposition of the appeal." *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 952 (Fed. Cir. 1997). "Unless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication." *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 757 F.3d 1366, 1371 (Fed. Cir. 2014) (quoting *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999)). Moreover, in interpreting this court's mandate, "both the letter and the spirit of the mandate must be considered." *TecSec*, 731 F.3d at 1341–42; *Pac. Gas & Elec. Co. v. United States*, 668 F.3d 1346, 1351–52 (Fed. Cir. 2012) (concluding that the "trial court's interpretation of the mandate . . . was within the letter and spirit of the mandate"). In that regard, "the scope of the . . . mandate, and thus the scope of the matters removed from the [trial] court's jurisdiction," is "coterminous with the scope of the issues deemed presented to the court on appeal." *Engel Indus.*, 166 F.3d at 1382 (citing *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939), and explaining that "[t]he scope of the issues presented to this court on appeal must be measured by the scope of the judgment appealed from").

Considering this case's proceedings beginning with those before Judge Damich and continuing through the Federal Circuit's remand — including the arguments made to Judge Damich, his grant of summary judgment in favor of Defendants, the parties' arguments on appeal, and the letter (and spirit) of the issue the Federal Circuit remanded — this Court concludes that Defendants are entitled to summary judgment. That is because once Plaintiffs abandoned their position that the inventions were first actually reduced to practice prior to the CRADA, there is nothing left for this Court to resolve; the critical fact is no longer disputed. The Federal Circuit sent this case back to this Court to resolve whether the inventions were actually reduced to practice *before or during* the CRADA. There was no third choice. Plaintiffs never argued either that the inventions were actually reduced to practice *after* the CRADA or that the inventions were never actually reduced to practice at all. Thus, the very premise of the Federal Circuit's remand is that the CRADA provided the government a license to practice the inventions if they were first actually reduced to practice during the CRADA (and not before it).

27

### 1. Plaintiffs' Assertions Before Senior Judge Damich and His Grant of Summary Judgment in Favor of Defendants

Until Plaintiffs' recent about-face, their position throughout this case has been clear and consistent: the inventions at issue were actually reduced to practice prior to the effective date of the CRADA. At the risk of being repetitive, this subsection chronicles Plaintiffs' consistent position, now abandoned, that the first actual reduction to practice was pre-CRADA; Plaintiffs staked out no other alternative position.

On June 3, 2019, and pursuant to Judge Damich's special procedures order in this case, ECF No. 10,[31] Plaintiffs indicated in their amended initial disclosure of asserted claims that "actual reduction to practice occurred no later than March 10, 2006." ECF No. 81-1 at 276; *see also* ECF No. 177-1 at 8–9 (Defendants' interrogatories to Plaintiffs quoting their initial disclosure).

In response to Defendants' July 3, 2019 motion for summary judgment pursuant to a CRADA license, Plaintiffs once again contended that the first actual reduction to practice of the inventions occurred *before* the CRADA. In particular, Plaintiffs asserted that "[d]iscovery will show these pictures evidence a fully assembled vehicle as claimed in the Patents-in-Suit before February 10, 2007, in the form of photographs and travel records." Pl. CRADA License Resp. at 15 (citing Kocher Decl. ¶ 22). Specifically, Plaintiffs asserted that "Mr. Kocher worked with a third-party, Ceradyne, Inc., to manufacture the first completed BULL before February 10, 2007." *Id.* at 15. Plaintiffs' position admitted no ambiguity about when they believed the first actual reduction to practice occurred: "[N]o license exists to the Patents-in-Suit because the first actual reduction to practice occurred before February 10, 2007, the earliest possible effective date[.]" *Id.* at 32; *see also id.* at 34 (quoting Compl. ¶ 22).

Prior to Plaintiffs' response to Defendants' pending motion for sanctions, *see* Pl. Sanction Resp., Plaintiffs' only argument about the timing of the first actual reduction to practice was that it preceded the CRADA. Plaintiffs repeatedly doubled down on that assertion before Judge Damich and in the years after.

For example, on March 13, 2020, in a joint stipulation filed with this Court, Plaintiffs indicated that they "expect to demonstrate that genuine issues of disputed material fact exist regarding the ***prior*** reduction to practice of the claimed inventions." ECF No. 109 at 5 (emphasis in original). In particular, Plaintiffs asserted that "the existing record compels, *inter alia*, the conclusions: (i) that prior testing of the armor on March 10, 2006, established that the armor would work for its intended purpose; and (ii) that the

---

[31] *See supra* note 10. These procedures included an "Initial Disclosure of Asserted Claims" where Plaintiffs had to disclose "the date of reduction to practice of each asserted claim." ECF No. 10 ¶ 8(b)(iii).

*claims were reduced to practice* by virtue of the armored vehicle that was built *before* Feb. 10, 2007." *Id.* (emphases added) (citing Kocher Decl. ¶¶ 22–23; ECF No. 72-1 at 1–3, 165–71)).

Moreover, while Plaintiffs repeatedly asserted that the inventions' first actual reduction to practice occurred prior to the CRADA, Plaintiffs **never** disputed that, at a minimum, the testing during the CRADA's term was sufficient for *an* actual reduction to practice. In other words, if Judge Damich held the CRADA's scope covered Plaintiffs' inventions, there were just two competing views for him to consider: (1) Plaintiffs' view — the pre-CRADA testing supported a first actual reduction to practice upon the embodiment's completion before February 10, 2007, thus depriving the government of a license to practice the inventions; and (2) Defendants' view — the testing during the CRADA's term established a first actual reduction to practice in March 2007, thus yielding the government a license to practice the inventions.

As explained at length above, Judge Damich initially denied Defendants' motion for summary judgment on the reduction-to-practice timing. *Ideal Innovations*, 148 Fed. Cl. at 396. In so doing, Judge Damich reached the following conclusions:

> 2. An actual reduction to practice of the invention occurred under the CRADA.
> . . . .
> 4. An actual test is necessary to prove that the prototype of the armored vehicle works for its intended purpose.
> . . . .
> 6. Plaintiffs, having admitted that an actual reduction to practice occurred under the CRADA, now bear the burden of proof and of going forward.

148 Fed. Cl. at 396. On the basis of these conclusions, Judge Damich ordered "a mini-trial to determine the date of the first actual reduction to practice[.]" *Id.*

In the subsequent May 28, 2020 status conference, Judge Damich asked Plaintiffs about their evidence of actual reduction in case the answer would "short-circuit" the need for the mini-trial. May 2020 Tr. 7:2–18. Plaintiffs repeatedly asserted that they wanted the mini-trial to proceed so that they could prove that the inventions were first reduced to practice prior the CRADA. *See, e.g.*, May 2020 Tr. 10:11–17. Thus, Plaintiffs' counsel asserted that "the actual claims of the . . . patents[] had actually been reduced to practice by February the 1st[, 2007]." May 2020 Tr. 9:12–15. It was not a naked assertion; Plaintiffs' counsel proffered that certain "photographs coupled with the testimony of Mr. Kocher and . . . the VP of armor for Ceradyne" would demonstrate "that by February the 1st . . . there had been a firing and a test coupon, and the armor had been put on the vehicle[.]" *Id.* 9:11–22. This assertion was made repeatedly. *See* May 2020 Tr. 12:4–12 ("[PLAINTIFF'S COUNSEL:] . . . [W]e have sufficient facts to meet our preponderance of

the evidence standard on February the 1st, and that that [sic] is because a fully constructed vehicle as a matter of law, we would say, is a requirement in the prevailing law."); *id.* 19:13–20 ("[PLAINTIFF'S COUNSEL:] . . . [W]hat we would expect to present in the mini-trial from Mr. Kocher and Mr. King . . . would be sufficient to demonstrate by a preponderance of the evidence that there was an actual reduction to practice in the first week of February[.]").

In Plaintiffs' final filing with Judge Damich (*i.e.*, the supplemental brief about actual reduction to practice), and prior to their appeal to the Federal Circuit, Plaintiffs once again asserted that, during a mini-trial on reduction to practice, "Plaintiffs will present photographic evidence demonstrating the build progress, and construction, of the BULL prototype before February 10, 2007 — *i.e.*, earlier than the effective date of the CRADA."  ECF No. 119 at 4.

In sum, Plaintiffs' definitive position before Judge Damich was that the inventions at issue were actually reduced to practice prior to the CRADA's effective date. Concomitantly, Plaintiffs never contested Defendants' position that testing performed during the CRADA constituted *an* actual reduction to practice.  Rather, the debate centered on only two possibilities for when the inventions' first actual reduction to practice occurred:  before or during the CRADA's term.  The Federal Circuit succinctly summarized this narrow factual dispute:

> Appellees argued that the patents were licensed to the government because they were first reduced to practice during the term of the CRADA.  In opposition, Appellants maintained that "a genuine dispute as to a material fact exist[ed]" because "the March 10, 2006 test fire [w]as the first actual reduction to practice date."  In other words, *Appellants contended that the inventions were reduced to practice about one year prior to the effective date of the CRADA.*

Federal Circuit Decision at *2 (alterations in original) (citations omitted) (quoting ECF No. 79, at 9–10).

Ultimately, Judge Damich decided there was no point to a mini-trial because the record clearly established that the first actual reduction to practice occurred during the CRADA, the scope of which covered the inventions at issue.  ECF No. 122 at 1 (describing the timing of the first actual reduction to practice as a material question per *Ideal Innovations*, 148 Fed. Cl. 385); *id.* at 3 (canceling the mini-trial).  Accordingly, he granted Defendants' motion for summary judgment.

### 2. Plaintiffs' Position During Their Federal Circuit Appeal

Plaintiffs appealed Judge Damich's grant of summary judgment in favor of Defendants regarding the timing of the first actual reduction to practice and the associated license the CRADA thus provided to the government.  ECF No. 123 (July 6, 2020, entry of judgment following Judge Damich's decision, ECF No. 122); ECF No. 125 (July 21, 2020, notice of appeal).  As described in detail above, Plaintiffs raised several arguments in their opening appellate brief.  *See supra* Section I.B.6.  Throughout Plaintiffs-Appellants' briefs, Plaintiffs repeatedly and consistently maintained that the first actual reduction to practice preceded the CRADA.  *See, e.g.*, Plaintiffs-Appellants' Brief at *34, *36–37, *46; Plaintiffs-Appellants' Reply at 13, 15.  Indeed, their briefs repeatedly cite Mr. Kocher's declaration for the specific proposition that the first actual reduction to practice preceded the CRADA.  *See* Plaintiffs-Appellants' Brief at *11–13, *20, *36–39 (citing Kocher Decl. ¶¶ 22–23); Appellants' Reply at 7–8 (same).

Ultimately, the Federal Circuit identified a single genuine dispute of material fact: "namely, whether a POSA would have known, based on the [March 10, 2006] coupon testing, that the invention would work for its intended purpose."  Federal Circuit Decision at *6.  This means that the Federal Circuit implicitly, but necessarily, rejected any contention that:  (1) the CRADA's terms did not cover the inventions; or (2) the inventions were possibly reduced to practice after the CRADA expired; or (3) the inventions were simply never reduced to practice.  Again, the Federal Circuit clearly remanded this case for this Court to determine whether:  (a) the first actual reduction to practice occurred during, and thus the inventions were covered by, the CRADA; *or* (b) whether the first actual reduction to practice preceded the CRADA and thus the government did not receive a license to practice the inventions at issue.  In essence, Plaintiffs' counsel of record conceded this very point:

> **THE COURT:** . . . So your argument to the Circuit was, give us an opportunity to show that the 2006 coupon testing was sufficient.
>
> **MR. DAVIS:** Yes.
>
> **THE COURT:** And they agreed.
>
> **MR. DAVIS:** [W]e made that argument, and [the Federal Circuit] agreed.

Sanctions Hearing Tr. 11:2-8.

### 3. Plaintiffs' Post-Appeal Position

After the Federal Circuit's decision, Plaintiffs continued to focus exclusively on their contention that the first actual reduction to practice of the inventions preceded the

CRADA.  Plaintiffs did not pursue arguments about either the CRADA's scope or the sufficiency of testing during the CRADA.

For example, during the first status conference following the Federal Circuit's remand, Judge Lerner asked each party to comment on "what remains to be decided on remand and how best to get this case ready for final resolution."  Mar. 2022 Tr. 7:1–7. Plaintiffs answered the Court's inquiry in the following manner:

> [I]f, in fact, there was not an actual reduction to practice *before* the CRADA was signed, [then] under the terms of the agreement between the Plaintiffs and the Government, *that would mean that the Government got a license* and, therefore, had what amounts to an affirmative defense.  *And there's no really dispute about that.*
>
> *What is hotly disputed* and what remains hotly disputed after the Federal Circuit's remand is the factual predicate of whether, in fact, there was an actual reduction to practice *before* the CRADA was executed.

Mar. 2022 Tr. 8:13–24 (emphases added).

Accordingly, Plaintiffs were not merely silent on the CRADA's scope — they affirmatively indicated there was no longer a dispute as to that scope.  Furthermore, Plaintiffs focused on pre-CRADA testing of the inventions but did *not* allege the insufficiency of testing during the CRADA.

Plaintiffs cite the March 14, 2022 status conference as giving Defendants notice of Plaintiffs' newly disclosed position that the inventions were never actually reduced to practice during the CRADA.  Pl. Resp. to Def. Mot. Vacate at 7–8.  Specifically, Plaintiffs refer to their following statement to Judge Lerner: "[T]here is going to be a dispute about at least the term 'protection' and likely the term 'mobility' in the claim."  Pl. Resp. to Def. Mot. Vacate at 7–8 (emphasis omitted) (quoting Mar. 2022 Tr. at 19).

The complete context of Plaintiffs' quoted language reveals the disingenuity of Plaintiffs' argument.  This quoted sentence addressed claim construction, not the actual reduction to practice:

> So there is more than one fact that's in dispute, despite what the Government and the Third Party Defendants have said. *What is in dispute is whether there was a fully constructed embodiment before the CRADA was signed.  What is in dispute is how a person of ordinary skill in the art, including the inventory*

> [sic] *would have understood that embodiment to work for its*
> *intended purpose.* And despite what the Government and
> Third Party Defendants say . . . I'm not sure that they're
> correct at all when they say that claim construction is
> unnecessary.
>
> . . . [T]here is going to be a dispute about at least the term
> 'protection' and likely the term 'mobility' in the claim. I think
> that's going to be a very ripe dispute. *And so there are factual*
> *disputes and there are claim construction disputes that exist here.*

Mar. 2022 Tr. 18:15–19:12 (emphases added). Plaintiffs' brief carefully omits their own statements around the quoted excerpt where the context distinguishes between factual questions remanded to this Court and questions about claim construction. Moreover, Plaintiffs repeated that what remained in dispute was "*whether there was a fully constructed embodiment before the CRADA was signed.*" *Id.* 18:17–19 (emphasis added). Plaintiffs never contended that that the inventions were first actually reduced to practice, if at all, only after the CRADA expired.

In the initial status conference before the undersigned, the Court asked Plaintiffs to confirm the pending issues to be resolved:

> THE COURT: . . . I[t] seems like there may be two dispositive
> threshold issues still bouncing around. One is the issue with
> *reduction to practice and the date of the CRADA* that is on remand
> from the Federal Circuit, and the other question is the three
> summary judgment briefs . . . on the on-sale bar . . . . Did I get
> the two unresolved arguable threshold issues right?

Nov. 2022 Tr. 5:19–24, 6:1–2 (emphasis added). Plaintiffs' counsel answered that question in the affirmative. *Id.* 6:3–10. When the Court asked Plaintiffs if there were "[a]ny other[]" outstanding issues, Plaintiffs' counsel answered in the negative. *Id.* 6:15–17 ("Not that the Plaintiff is aware of[.]").

In the November 30, 2022 status conference, Plaintiffs indicated that the CRADA's scope was "something that [they] would plan to argue again as a part of the reduction in practice, CRADA issues." Nov. 2022 Tr. 12:9–25. The Court declined at that moment to bar Plaintiffs from challenging the CRADA's scope, but the Court concluded by noting that "if that's what you want to brief, we'll take a look." Nov. 2022 Tr. 13:12–20. But there was no discussion about a set of facts that would be deployed to challenge Defendants' view that the testing during the CRADA was sufficient to demonstrate an actual reduction to practice of the inventions during the CRADA's term.

### 4. Plaintiffs' Assertions Between December 2022 and May 2023

About five months transpired between when the parties discussed a CRADA mini-trial schedule and when the mini-trial was scheduled to occur. Throughout that time, Plaintiffs' exclusive focus for the mini-trial was whether the inventions had an actual reduction to practice before the CRADA.

As one critical example, on December 9, 2022, Plaintiffs answered Defendants' interrogatories. ECF No. 175-14. Defendants had asked about Plaintiffs' contention of an actual reduction to practice on or before March 10, 2006. ECF No. 175-14 at 8. Plaintiffs responded by "incorporat[ing] by reference" Plaintiffs' appellate briefs without elaboration and then immediately reasserting that the inventions "were first actually reduced to practice in early February 2007 *before* the [CRADA]." *Id.* at 8–10 (emphasis added). Plaintiffs' answer also incorporated Plaintiffs' answer to interrogatory 2, in which Plaintiffs represented that "on March 10, 2006, Plaintiffs successfully tested an armor coupon developed by Plaintiffs which demonstrated an ability to defeat an [EFP]." *Id.* at 7, 10. These December 9, 2022 responses do not remotely hint that: (1) Plaintiffs questioned the existence of an actual reduction to practice during the CRADA; or (2) Plaintiffs might allege a post-CRADA first actual reduction to practice or during some other unidentified time period.

On January 26, 2023, Plaintiffs responded to an inquiry from Defendants by confirming the completeness of their previous production. ECF No. 173-4 at 2–3 ("[T]here are no other responsive documents to produce at this time."). In response to Defendants' concern that Plaintiffs had not "identif[ied] the relevant events that constitute the actual reduction to practice," ECF No. 173-3 at 3, Plaintiffs avoided giving an answer that would have disclosed that Plaintiffs planned to present a new argument based on newly postulated facts, *see* ECF No. 173-4 at 3.

### 5. Plaintiffs' Assertions Show There Is No Genuine Dispute of Material Fact Regarding the First Actual Reduction to Practice of the Inventions During the CRADA

As demonstrated above, the Federal Circuit's mandate all but expressly instructed that there were only two possible factual scenarios for this Court to decide between on remand following trial: (1) as Plaintiffs argued, the inventions at issue were first actually reduced to practice prior to the CRADA (and, thus, the government lacked a license to practice them); or (2) as Defendants posited, the inventions were first actually reduced to practice during the CRADA (and, thus, the government had a license to practice them). This precise question the Federal Circuit remanded makes no sense if the Federal Circuit

had agreed with Plaintiffs that the CRADA's scope simply did not cover the inventions.[32] Indeed, the Federal Circuit held that "whether a POSA would have known, based on the [March 10, 2006] coupon testing, that the invention would work for its intended purpose" constituted "an issue of material fact." Federal Circuit Decision at *6. But whether testing showed the invention would work for its intended purpose is immaterial if the CRADA's scope does not cover the inventions to begin with.[33] This Court cannot revisit that basic premise now. *See TecSec*, 731 F.3d at 1341–42; *Briggs*, 334 U.S. at 306. At a minimum, doing so would be grossly inconsistent with the spirit of the Federal Circuit's mandate.

Moreover, Plaintiffs' new theory to avoid summary judgment is barred by judicial estoppel. As this Court has noted previously, "[t]he doctrine of judicial estoppel is intended to prevent a litigant from 'playing fast and loose with the courts' by assuming contrary positions in legal proceedings[.]" *City of Wilmington v. United States*, 152 Fed. Cl. 373, 378–79 (2021) (quoting *Def. Tech., Inc. v. United States*, 99 Fed. Cl. 103, 127 (2011), and citing *Hous. Auth. of Slidell v. United States*, 149 Fed. Cl. 614, 643 (2020)). Thus, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the [other] party[.]" *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).

The Supreme Court has identified a series of factors to consider when applying the doctrine of judicial estoppel: (1) the party's later position must be "clearly inconsistent" with its earlier position, *id.* at 750 (quoting *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999) and citing other cases); (2) the party must have succeeded in persuading a court to adopt the earlier position, thereby posing a "risk of inconsistent court determinations," *id.* at 750–51 (quoting *United States v. C.I.T. Constr. Inc.*, 944 F.2d 253, 259 (5th Cir. 1991)); and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped," *id.* at 751 (citing cases). These factors are "non-exclusive" and "guide a court's decision whether to apply judicial estoppel[.]" *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1307 (Fed. Cir. 2007).

In *Lamonds v. Gen. Motors Corp.*, for example, a magistrate judge conducted a summary judgment hearing. 34 F. Supp. 2d 391, 395 (W.D. Va. 1999). The plaintiff's attorneys represented to the magistrate that they had a single theory of causation in a tort

---

[32] Before the Federal Circuit, Plaintiffs contended that the CRADA's scope did not cover the inventions at all. *See* Plaintiffs-Appellants' Brief at *49–52; Plaintiffs-Appellants' Reply at 19–20.

[33] *See* Sanctions Hearing Tr. 15:3-12 ("**THE COURT:** . . . If the CRADA doesn't cover the invention, this cannot be a material fact. **MR. DAVIS:** So if the CRADA does not cover the invention, I agree with you that the date of the actual reduction to practice doesn't matter at all. . . . **THE COURT:** And then it wouldn't be a material fact. **MR. DAVIS:** And it wouldn't be a material fact[.]").

action. *Id.* The magistrate "recommended . . . that [the defendant's] summary judgment motion be denied" entirely "[b]ecause of this understanding of the case[.]" *Id.* The district court concurred in that recommendation. *Id.* When plaintiffs sought to advance a new theory of liability, the district court rejected it, applying judicial estoppel: "[t]here can be no doubt that the summary judgment proceeding constitutes a prior judicial proceeding and that the [first liability] theory was accepted and relied upon by both [the magistrate] and this court." *Id.* ("The Fourth Circuit has clearly held that the doctrine of judicial estoppel bars parties from prevailing as a result of inconsistent positions and representations made in a proceeding during the course of the same litigation." (citing *Allen v. Zurich Insurance Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982); *United States v. 198.73 Acres of Land*, 800 F.2d 434, 436 (4th Cir. 1986); *Fed. Deposit Ins. Corp. v. Jones*, 846 F.2d 221, 234 (4th Cir. 1988)).

This Court agrees with the rationale of the Western District of Virginia and the Fourth Circuit as illustrated in *Lamonds*. Applying that rationale here, Plaintiffs cannot be permitted to invert their theory of this case, particularly this late in the game. In this case, Plaintiffs successfully persuaded the Federal Circuit that there was a dispute of material fact regarding the timing of the first actual reduction to practice of the inventions. Plaintiffs specifically sought an opportunity to demonstrate that the first actual reduction to practice occurred *prior* to the CRADA's effective date. The Federal Circuit agreed and gave Plaintiffs a chance to pursue their factual contentions on remand. Now, having prevailed at the Federal Circuit, but realizing that they cannot prove their factual assertions, Plaintiffs want to take an entirely inconsistent position. *See, e.g.*, Sanctions Hearing Tr. 11:13–15 ("[PLAINTIFFS' COUNSEL]: We do not want the opportunity to try to establish a pre-February 10th, 2007 actual reduction to practice."). Permitting such a move would, at a minimum, require this Court to permit Defendants to engage in an entirely new round of discovery focused on Plaintiffs' new theory. If that is not "an unfair detriment," *New Hampshire*, 532 U.S. at 750–51, this Court is at a loss to explain what *would* qualify.

Finally, this Court recognizes that Plaintiffs, before the Federal Circuit, *did* argue that Judge Damich imposed an overly stringent testing standard by requiring testing in field conditions: "[C]onsistent application of the Government's field testing would remove the [invention] from the scope of the CRADA entirely." Plaintiffs-Appellants' Brief at *43–44. According to Plaintiffs, the Federal Circuit's mandate does not preclude this argument, which supposedly put Defendants on notice that Plaintiffs would argue the inventions were not actually reduced to practice during the CRADA. *See* Pl. Resp. to Def. Mot. Vacate at 7; Pl. Sanction Resp. at 6–7, 14–15. Plaintiffs get points for creativity, but their argument borders on the absurd for the simple reason that the Federal Circuit rejected Judge Damich's conclusion that the law and undisputed facts required some specific testing protocol. Indeed, the Federal Circuit concluded that "[w]hether testing is necessary to determine an invention works for its intended purpose and whether a given test method is sufficient are questions of fact." Federal Circuit Decision at *5 (holding that

36

"the evidence demonstrates a genuine dispute about the scope of testing required for a POSA to determine the invention would work for its intended purpose").  At the end of the day, Plaintiffs never argued that the inventions were first reduced to practice, if at all, only after the CRADA expired.[34]  They cannot do so now.

### B.  In the Alternative, Plaintiffs Cannot Start this Case Over From Scratch

Defendants' motion for sanctions pursuant to RCFC 37(c) also remains pending.  *See* ECF No. 181.  The Court agrees that sanctions are appropriate; this Court will not permit Plaintiffs to pursue their new, and previously undisclosed, legal and factual theories.  Even if the Federal Circuit's mandate does not effectively require judgment for Defendants — and even if judicial estoppel does not preclude Plaintiffs' new position — this Court still concludes that Defendants are entitled to judgment.  The first actual reduction to practice of the inventions at issue did not occur before the CRADA's effective date.  Plaintiffs admit that.  This situation leaves this Court with only one possibility, which is the same conclusion Judge Damich reached:  the first actual reduction to practice was during the CRADA, so the government had a license to practice the inventions.  Accordingly, Defendants are entitled to summary judgment.

In a nutshell, Defendants have persuasively explained how Plaintiffs "intend[ed] to switch theories of the case on the eve of trial[,] . . . failed to search for and produce a substantial volume of responsive and highly relevant documents that were within [Plaintiffs'] possession," and produced documents "weeks after fact and expert discovery closed."  Sanction Mot. at 5–6.  Defendants argue that Plaintiffs late revelations amount to a failure to supplement or correct Plaintiffs' December 9, 2022 responses to interrogatories and requests for production.  *See* Sanction Mot. at 9.  Such a failure, Defendants maintain, should result in sanctions pursuant to RCFC 37(c).  *Id.*  This Court agrees.

As explained above, parties "must supplement or correct" their initial disclosure and discovery responses "in a timely manner."  RCFC 26(e)(1).  An updated, supplemental, or corrected disclosure is necessary "if the party learns that in some material response the [initial] disclosure or response is incomplete or incorrect" and "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]"  RCFC 26(e)(1).  With respect to interrogatory responses, for example, "as theories mature and as the relevance of various items of evidence changes, responses to interrogatories . . . must be corrected or supplemented to reflect those changes."  *MLC Intell. Prop.*, 10 F.4th at 1372.  A party that fails to provide this supplement or correction "is not allowed to use that information . . .

---

[34] Counsel of record for Plaintiffs conceded that they did not appeal Judge Damich's finding — which was based in part on Plaintiffs' own complaint — that there was an actual reduction to practice during the CRADA.  Sanctions Hearing Tr. 13:4-9.

to supply evidence . . . unless the failure was substantially justified or is harmless." RCFC 37(c)(1). The Court may also impose additional sanctions, including "payment of the reasonable expenses . . . caused by the failure," a prohibition against supporting or opposing particular claims, and dismissal of an action in whole or in part. RCFC 37(c)(1)(A)–(C) (citing RCFC 37(b)(2)(A)(i)–(vi)); *see K-Con Bldg. Sys., Inc. v. United States*, 106 Fed. Cl. 652, 660 (2012) (describing the available sanctions pursuant to RCFC 37(c)(1)).

For the Court to grant Defendants' request to "preclude[] [Plaintiffs] from affirmatively relying upon any of its late produced documents," Sanction Mot. at 16, the Court must conclude that Plaintiffs failed to provide information and that the failure was neither substantially justified nor harmless. All parties agree that the applicable framework for deciding whether sanctions are warranted is a five-factor test articulated in *Abbey v. United States*, 132 Fed. Cl. 307 (2017). *See* Sanction Mot. at 7 (quoting *Abbey*, 132 Fed. Cl. at 311); Pl. Sanction Resp. at 15–20 (discussing the "Five Rule 37(c) Factors"). Those five *Abbey* factors are: "(1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; and (5) the explanation for the failure to disclose." 132 Fed. Cl. at 311 (citing *Zoltek Corp. v. United States*, 71 Fed. Cl. 160, 168 (2006)).

Events between Plaintiffs' December 9, 2022 discovery responses and the filing of Defendants' motion to vacate demonstrate that Plaintiffs have stymied Defendants' efforts to obtain the discovery to which they are entitled. As recently as December 9, 2022, Plaintiffs, in their response to interrogatories, indicated their view that the inventions at issue "were first actually reduced to practice in early February 2007, before the" CRADA's effective date. ECF No. 175-14 at 8–9. This interrogatory response was never updated in a timely manner or otherwise. As demonstrated below, Plaintiffs replaced their theory of this case almost on the eve of the mini-trial this Court had scheduled. This cavalier approach to discovery obligations is inexcusable.

Pursuant to the Court's December 22, 2022 scheduling order, fact discovery for the mini-trial ended on March 3, 2023, and expert discovery ended on May 5, 2023. ECF No. 154 at 2. Consistent with a diligent discovery effort, Defendants asked Plaintiffs on March 16, 2023, for supplemental production when, two days earlier, a deposition revealed that Plaintiffs possessed never-produced documents that were potentially material. ECF No. 173-5 at 2–3 (requesting, amongst other things, Ideal Innovations' communications around the time of CRADA's February 10, 2007 effective date). Plaintiffs did not acknowledge this message for weeks, and they only responded on April 10, 2023, shortly after Defendants renewed their request. *See* ECF No. 173-6 at 2–3.

On April 12, 2023, Defendants expressed their understanding that Plaintiffs "electronically searched Mr. Kocher's email and [another person's] email and found no relevant documents, including emails." ECF No. 173-6 at 2 (Defendants' email to

Plaintiffs).  In the same message, Defendants provided Plaintiffs with additional search terms.  *Id.*  Receiving no acknowledgement or response, Defendants followed up on their April 12, 2023 message with additional emails on April 21, 2023, and May 4, 2023.  ECF No. 173-8 at 2 ("Having received no response, we would like to have a final conference on the matter.").

Plaintiffs finally responded on May 4, 2023, the day before discovery was set to close, with a succinct message about availability for a conference on May 8, 2023.  ECF No. 173-9 at 4–5.  During the more than three weeks between Defendants' April 12, 2023 email and Plaintiffs' May 4, 2023 response, Plaintiffs' counsel discovered the unsearched trove of documents that would result in Plaintiffs' additional May 11, 2023 document production.  *See* ECF No. 175-1 ¶¶ 4–5.  Thus, at the absolute latest, Plaintiffs were aware of the never-produced documents on May 4, 2023.  *See* ECF No. 175-1 ¶ 6.  Even if Plaintiffs learned of the overlooked files on May 4, 2023 (which would mean Plaintiffs took weeks to complete Defendants' April 12, 2023, request), Plaintiffs demonstrated no urgency in giving notice of possible supplemental production days before the pretrial filings were due and less than two months before the trial.  Again, during this time, Plaintiffs did not amend their December 9, 2022 interrogatory responses.

On May 8, 2023, the parties conferred, and Plaintiffs indicated that they would make a supplemental production of documents.  ECF No. 175-1 ¶ 6.  That conversation took place the day the parties filed their exhibit and witness lists for the then-scheduled mini-trial, pursuant to the Court's scheduling order.  *See* ECF Nos. 168–71.  Plaintiffs' exhibit and witness lists gave no indication that Plaintiffs would reverse their position from what they argued prior to and during the Federal Circuit appeal regarding the inventions' first actual reduction to practice.  Again, Plaintiffs' December 9, 2022 interrogatory responses remained unamended.

On May 11, 2023, Plaintiffs produced 1,131 new pages of documents, including documents demonstrating that there was no embodiment of the inventions meeting the patents' claims as of the CRADA's effective date.  *See* ECF No. 175-1 ¶ 6; *see also* ECF No. 173-12 at 2 (email about embodiment incompleteness); ECF No. 173-13 at 2–3 (same).  On May 12, 2023, Defendants called Plaintiffs' attention to newly produced documents that undercut Plaintiffs' theory about an actual reduction to practice prior to the CRADA effective date.  ECF No. 173-9 at 4.  The parties then conferred twice over the following week.  ECF No. 173-9 at 2.  Plaintiffs still did not amend their December 9, 2022 interrogatory responses.

Indeed, it was not until May 22, 2023, that Plaintiffs first suggested in writing that they were entirely shifting their theory of when a first actual reduction to practice occurred.  ECF No. 173-9 at 2.  Plaintiffs still did not amend their December 9, 2022 interrogatory responses; Plaintiffs inexplicably maintain that those responses require no

correction or supplementation. *See, e.g.*, Pl. Sanction Resp. at 11 ("Plaintiffs' December 9, 2022 response was complete and no supplementation was required.").

Plaintiffs now argue, in essence, that Defendants should not have read Plaintiffs' June 3, 2019, initial disclosure — "that actual reduction to practice occurred no later than March 10, 2006" — to mean that Plaintiffs would consistently argue that the first actual reduction to practice occurred prior to the CRADA's effective date. *See* Pl. Sanction Resp. at 11.[35]

In summary, the approximately two-month timeframe from March 16, 2023, to May 22, 2023, included: (1) Defendants' approximately six-week wait for Plaintiffs to merely acknowledge Defendants' discovery concerns; (2) Plaintiffs' belated production of documents resulting in Plaintiffs' redefinition of the mini-trial's planned focus; and (3) Plaintiffs' introduction of new legal theories months after the close of fact discovery and about one month before the scheduled mini-trial. During this time, Plaintiffs never updated either their initial disclosures or their December 9, 2022 interrogatory responses even though these documents contained Plaintiffs' assertion that the inventions were first actually reduced to practice prior to the CRADA.

The undisputed record shows that, in early May 2023 at the latest, Plaintiffs possessed information Defendants did not have and that rendered Plaintiffs' December 9, 2022 interrogatory responses erroneous. Returning to the five *Abbey* factors, they all weigh in favor of sanctions.

First, the late-disclosed information — *i.e.*, the newly uncovered emails about the timing of the inventions' embodiment which resulted in Plaintiffs' revised theories — is of critical import to this case. Indeed, those documents go to the heart of the issues considered by Judge Damich and then by the Federal Circuit. If this Court were to permit Plaintiffs' new contentions, the Court would in effect reset this case as if all of those previous proceedings never happened.

Second, Plaintiffs' newly revealed information constituted a massive surprise to Defendants and this Court. Plaintiffs' new document production and new contentions of fact essentially rendered months of discovery, not to mention the May 8, 2023 pretrial filings, largely useless. As discussed *supra*, Plaintiffs' well-established position coming into the then-scheduled mini-trial did not include the new legal theories summarized in Plaintiffs' May 22, 2023 email. Plaintiffs' attempt to completely reframe the mini-trial roughly a month before its scheduled date runs counter to the very goals and purpose of the discovery process: eliminating "trial by ambush." *Sec. & Exch. Comm'n v. GenAudio Inc.*, 32 F.4th 902, 938 (10th Cir. 2022) ("[T]he disclosure requirements of Rule 26(e)(2) prevent parties from becoming 'prejudicially surprised' by evidence and testimony and

---

[35] *See supra* note 31 regarding Plaintiffs' initial disclosure.

from going through a 'trial by ambush[.]'" (quoting *O'Donnell v. Ga. Osteopathic Hosp., Inc.*, 748 F.2d 1543, 1549 (11th Cir. 1984)); *see also DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 939 (N.D. Ill. 2021) ("Long ago, our system rejected trial by ambush, and instead, instituted the discovery process. The disclosure and discovery rules exist to ensure that cases are not litigated in the dark." (citations omitted) (citing cases)).

Third, Plaintiffs' new contentions would be highly disruptive to the mini-trial as scheduled by the Court and as anticipated by the parties through discovery. At a minimum, Defendants would be entitled to further discovery and would render years of work, including the Federal Circuit appeal, almost entirely worthless.

Fourth, curing the prejudice to Defendants would require substantial action by the parties and the Court. At a minimum, this Court would have to provide an extended period for reopened discovery, which would entail costs for all parties and prolong this case. Even then, a new discovery period would not entirely cure the prejudice to Defendants. *Cf. Abbey*, 132 Fed. Cl. at 314–15 (concluding that delay's prejudice was incurable in part because reopening discovery "would unjustifiably cost [the prejudiced party] time and resources for which the court cannot provide compensation").

Fifth, Plaintiffs' explanation for their lack of disclosure weighs in favor of sanctions. Critical documents that Plaintiffs have possessed for years only reached Defendants months after the close of the mini-trial discovery period. Plaintiffs' vague invocation of some technical oversight simply doesn't cut the mustard. What is more troublesome here is that Plaintiffs' late revision of their central contention — regarding when a first actual reduction to practice of the inventions occurred — stemmed from their own, inexcusably late document production. To be clear, Plaintiffs' new position did *not* result from any information Defendants provided. Sanctions Hearing Tr. 23:25 — 24:10.

This Court concludes that Plaintiffs' late discovery supplementation was neither substantially justified nor harmless. Accordingly, the Court grants Defendants' motion for sanctions. Pursuant to RCFC 37, Plaintiffs may not use the documents first disclosed on May 11, 2023, nor may Plaintiffs now revise their initial disclosures or interrogatory responses. *See* RCFC 37(c)(1). Plaintiffs may not present or argue theories that contradict Plaintiffs' initial disclosure or their December 9, 2022 interrogatory responses; that is, Plaintiffs are bound to their disclosed theory that an actual reduction to practice occurred prior to the CRADA's effective date in connection with the March 10, 2006 coupon test. The fatal problem for Plaintiffs is that they concede that they cannot prove that timing.

Thus, there remains no genuine dispute of material fact for this Court to resolve — the inventions were reduced to practice during the CRADA's term.[36]

## IV.    CONCLUSION

Based on the Federal Circuit's mandate, the Court **GRANTS** Defendants' motion for summary judgment, ECF No. 72, as renewed on June 13, 2023.  In the alternative, the Court **GRANTS** Defendants' motion for sanctions pursuant to RCFC 37(c), and, accordingly, **GRANTS** Defendants' renewed motion for summary judgment.  Either way, this Court concludes that the inventions were first actually reduced to practice during the term of the CRADA and thus the government had a license to practice the inventions.  Whether that negates a critical jurisdictional fact or establishes Defendants' affirmative defense, the result is the same:  the Clerk of the Court is directed to enter **JUDGMENT** for Defendant, terminating this case.

**IT IS SO ORDERED**.

s/Matthew H. Solomson
Matthew H. Solomson
Judge

---

[36] *See* Sanctions Hearing Tr. 48:17-20 ("MR. DAVIS:  [T]here's no dispute . . . that if there was a reduction to practice during the term of the CRADA that the Government would have a license. That's true.").